# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

STREAMBEND PROPERTIES III, LLC,
and STREAMBEND PROPERTIES IV, LLC,

              Plaintiffs,

v.
                              **MEMORANDUM OF LAW & ORDER**
                              Civil File No. 10-4745 (MJD/SER)

SEXTON LOFTS, LLC,
et al.,

              Defendants.

Jonathan L. R. Drewes and Michael Wang, Drewes Law, PLLC, Counsel for Plaintiffs.

Christopher L. Goodman and Richard A. Lind, Lind, Jensen, Sullivan & Peterson, PA, Counsel for Defendant Burnet Realty, LLC.

## I.      INTRODUCTION

This matter is before the Court on Defendant Burnet Realty LLC's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).  [Docket No. 25] The Court heard oral argument on September 30, 2011.

## II.     BACKGROUND

### A.     Factual Background

Plaintiffs Streambend Properties III, LLC, and Streambend Properties IV, LLC, (collectively, "Streambend") are both Minnesota limited liability companies located in Eden Prairie, Minnesota.  (Second Amended Complaint ("SAC") ¶¶ 4-5.)  Jerald Hammann is the Chief Manager of Streambend III and IV.  (<u>Id.</u> ¶ 34.) Defendant Burnet Realty, LLC ("Burnet Realty") is a Minnesota limited liability company.  (<u>Id.</u> ¶ 22.)  There are eighteen Defendants in this case.  The SAC collectively refers to the sixteen Defendants other than Burnet Realty and Sexton Lofts, LLC, as the "Developers" of the Sexton Lofts condominium project, to be located at Portland Avenue South and Seventh and Eighth Streets South in Minneapolis.  (<u>Id.</u> ¶¶ 23-25.)  "Developers hired Burnet Realty to represent them and to act for and on their behalf in relation to the offer of sale and sale of condominium units to purchasers."  (<u>Id.</u> ¶ 31.)

Plaintiffs allege that "Burnet Realty assisted and/or provided advice in the preparation of misrepresentative sales documents and disclosure materials" for the Sexton Lofts and provided them to Plaintiffs through Hammann.  (<u>Id.</u> ¶¶ 32-33.)  Burnet Realty sales agents Michael R. Roess and Paul (last name unknown) also made verbal misrepresentations to Plaintiffs through Hammann by telephone on September 13 or 14, 2004, and in person on September 14, 2004, in

2

an effort to induce Streambend to enter purchase agreements and tender earnest money for units in the Sexton Lofts.  (Id. ¶¶ 34-36.)

Plaintiffs further allege that Burnet Realty procured Plaintiffs to sign sales documents and provide $18,800.00 in earnest money for two condominium units: Unit 410 and Unit 510.  (Id. ¶¶ 37-39, 42-43.)   The sale price for each condominium, including two parking spaces for each, was $349,405 each.  (Id. ¶ 59.)

The earnest money checks were to be held in an escrow account created by Burnet Realty to be distributed at closing.  (SAC ¶ 44(c).)

Plaintiffs entered the purchase agreements for the to-be-constructed units (the "Purchase Agreements") on November 4, 2004.  (Id. ¶ 41.)  The Purchase Agreements each stated that two parking stalls would be included with each unit.  (Id. ¶ 44.(a)-(b).)  On or before the date the Purchase Agreements were signed, Streambend also received the Disclosure Statement and a Declaration, each of which stated that each unit would be allocated at least one garage stall on property adjacent to the units.  (Id. ¶ 45(a).)

Plaintiffs claim that, after they entered the Purchase Agreements on November 4, 2004, Burnet Realty provided written, through the U.S. mail and

through electronic mail, and verbal, via the telephone and in person, communications intended to reassure Plaintiffs that their decision to purchase was sound.  (Id. ¶¶ 40-41.)

Streambend alleges that "Developers never constructed a parking ramp for the Development," and "Developers were unwilling to convey marketable title to the units."  (SAC ¶ 44.)  Streambend further alleges that "Developers admit that they never intended to construct the parking ramp prior to the date they sought to force closings on units in the Development, including the dates they attempted to force closings on the Purchase Agreements."  (Id. ¶ 46.)  The portion of the property which was intended to house the parking ramp was, at some point, removed from the development's Initial Declaration by the Developers; however, Streambend was not informed of this change.  (Id. ¶ 50.)

On June 1, 2006, Sexton Lofts, LLC, served upon Streambend Notices of Cancellation of Purchase Agreement for Units 410 and 510, pursuant to Minnesota Statute § 559.217.  (SAC ¶ 52; Notices of Cancellation, Goodman Aff., Ex. D.)  The Cancellation Notices alleged that Streambend had defaulted by not closing within 30 days after Minneapolis issued the certificate of occupancy. (SAC ¶ 54.)  Streambend alleges that Minneapolis issued the certificate of

occupancy for Unit 510 on April 24, 2006, and for Unit 410 on June 5, 2006.  (Id. ¶¶ 55-56.)  The Notices warned that the Purchase Agreements would be cancelled 30 days after service of the Notices, unless, before that date, Streambend complied with its obligations under the purchase agreement or secured a district court order suspending termination of the purchase agreement pending a final decision on the merits.  (Notices of Cancellation.)  They further warned that, if Streambend did not perform either of the foregoing choices, it would lose its earnest money, and it might lose its right to assert any claims or defenses.  (Id.)  Alternatively, Streambend could serve its own notice of cancellation, in which case the Purchase Agreements would be immediately cancelled but Streambend's entitlement to the earnest money could be later determined by a court or by arbitration.  (Id.)  The Notices followed the Minnesota statutory form for cancellation of residential purchase agreements. See Minn. Stat. § 559.217, subd. 5.

Streambend claims that, after its title in the units was terminated, another real estate company marketed the units for $552,250 each, including one garage stall each.  (SAC ¶ 60.)  It further claims that, in October 2006, Unit 210, which was substantially similar to Units 410 and 510, was sold for $567,000.  (Id. ¶ 61.)

Streambend asserts that it was deprived of the increase in value to units 410 and 510, along with the accompanying parking spaces, and the value of the overall development.  (SAC ¶¶ 63-64.)  It also asserts that it was deprived of its earnest money deposits totaling $18,800.  (Id. ¶ 65.)

## B.     Procedural Background

On November 29, 2010, Streambend filed a Complaint against Burnet Realty, Sexton Lofts, LLC, the Developers, and James M. Meyers.  On December 29, 2010, Plaintiffs filed an Amended Complaint against the same Defendants, with the exception that James M. Meyers was eliminated as a Defendant because he has filed for bankruptcy.  Burnet filed a motion to dismiss the Amended Complaint.  After that motion was fully briefed, Plaintiffs received permission to file a Second Amended Complaint.

On June 20, 2011, Plaintiff filed a SAC against the same Defendants as the Amended Complaint, with the addition of Defendant John Gamble, as managing trustee for the Michael R. Myers Trust.

Plaintiffs allege nine counts against the numerous Defendants based on the cancellation of Plaintiffs' Purchase Agreements for the two condominium units in the failed Sexton Lofts project and the failure of the Developers to build a

parking garage.  The following counts are asserted against Defendant Burnet

Realty: Count One: Violation of 15 U.S.C. § 1703(a)(2)(B); Count Two: Violation

of 15 U.S.C. § 1703(a)(2)(A) and (C); Count Four: Fraud; Count Seven: Unjust

Enrichment; Count Eight: Minnesota Statute § 559.217, subd. 2; and Count Nine:

Negligent Misrepresentation.

In their opposition to the original motion to dismiss the Amended

Complaint, Plaintiffs voluntarily dismissed Count Seven, Unjust Enrichment, as

to Burnet Realty because "based upon the exhibits and affidavits provided by

Burnet Realty . . . the amount of Burnet Realty's unjust enrichment is minimal."

([Docket No. 11] Original Opp. at 2.)

## III.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may

move the Court to dismiss a claim if, on the pleadings, a party has failed to state

a claim upon which relief may be granted.  In reviewing a motion to dismiss, the

Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d

842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is

plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." PureChoice, Inc. v. Macke, Civil No. 07-1290, 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Circ. 1999)).  In this case, the Notices of Cancellation and the Purchase Agreements are referenced in, relied upon by, and embraced by the SAC.  See Enervations, Inc. v. Minn. Mining & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004).  Other outside materials submitted by the parties have not been considered by the Court.

**B.    Interstate Land Sales Act (Counts One and Two)**

**1.    The Interstate Land Sales Act**

The Interstate Land Sales Act, 15 U.S.C § 1701, et seq., ("ILSA") "is designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by

8

potential buyers.  The Act is based on the full disclosure provisions and

philosophy of the Securities Act of 1933, which it resembles in many respects."

Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla., 426 U.S. 776, 778 (1976)

(citation omitted).

Counts One and Two are based on 15 U.S.C. § 1703(a)(2)(A)-(C), which

provides:

> It shall be unlawful for any developer or agent, directly or indirectly,
> to make use of any means or instruments of transportation or
> communication in interstate commerce, or of the mails—
>
> * * *
>
> > (2) with respect to the sale or lease, or offer to sell or lease, any
> > lot not exempt under section 1702(a) of this title—
> >
> > > (A) to employ any device, scheme, or artifice to defraud;
> > >
> > > (B) to obtain money or property by means of any untrue
> > > statement of a material fact, or any omission to state a
> > > material fact necessary in order to make the statements
> > > made (in light of the circumstances in which they were
> > > made and within the context of the overall offer and
> > > sale or lease) not misleading, with respect to any
> > > information pertinent to the lot or subdivision; [or]
> > >
> > > (C) to engage in any transaction, practice, or course of
> > > business which operates or would operate as a fraud or
> > > deceit upon a purchaser;

## 2.      Statute of Limitations

The Court holds that, on the face of the SAC, Plaintiffs' ILSA claims are

barred by the statute of limitations.

An ILSA action must be filed within "three years after discovery of the

violation or after discovery should have been made by the exercise of reasonable

diligence." 15 U.S.C. § 1711(a)(2).  Dismissal under 12(b)(6) is appropriate when

it appears from the face of the complaint that the limitations has run, and the

complaint contains no facts to toll that running.  Varner v. Peterson Farms, 371

F.3d 1011, 1016 (8th Cir. 2004).

Counts One and Two are barred because Streambend knew, or reasonably

should have known, of the facts giving rise to an ILSA claim more than three

years before this action was commenced on November 29, 2010 (by November

29, 2007).  15 U.S.C. § 1711(a)(2) provides that the three-year limitations period

starts to run when the plaintiff has actual or constructive knowledge of the

alleged violations.  It notes that the statute imposes on purchasers a duty to

"exercise . . . reasonable diligence" in discovering ILSA violations.  Id.

Streambend's ILSA violations are based on claims that, in spite of

representations or omissions to the contrary, Defendants failed to construct a

parking ramp, failed to transfer title to the land on which the ramp was to be

10

built, and failed to provide an amended Disclosure Statement before Developers

attempted to close on the Purchase Agreements.  (SAC ¶¶ 70, 81.)  Streambend

knew of these ILSA violations by the time Defendants terminated the Purchase

Agreements in June 2006, more than three years before this lawsuit was

commenced.

By June 2006, when the Purchase Agreements were cancelled, Streambend

knew or should have known that the parking ramp had not been built:

> Developers' failure to construct the parking ramp prior to
> attempting to force closings by purchasers is inconsistent with the
> plain terms of the purchase agreements, which provide that parking
> spaces will be available upon closing.

(SAC ¶ 47.)

Additionally, Streambend knew that an amended Disclosure Statement

had not been provided "prior to service of the Cancellation Notices [in June

2006]."  (Id. ¶ 53.)

Streambend knew that its earnest money would be forfeited when it

received, but failed to contest or issue its own cancellation regarding, the Notice

of Cancellation served in June 2006:

> IF YOU DO NOT DO ONE OR THE OTHER OF THE ABOVE
> THINGS WITHIN THE TIME PERIOD SPECIFIED IN THIS
> NOTICE, YOUR PURCHASE AGREEMENT WILL BE CANCELED

> AT THE END OF THE PERIOD (AND YOU WILL LOSE ALL
> EARNEST MONEY YOU HAVE PAID ON THE PURCHASE
> AGREEMENT); AND YOU MAY LOSE YOUR RIGHT TO ASSERT
> ANY CLAIMS OR DEFENSES THAT YOU MIGHT HAVE.

(Notice of Cancellation at 2.)  <u>See also</u> Minn. Stat. § 559.217, subd. 7(a) ("After a

cancellation . . . the purchase agreement is void and of no further force or effect,

and . . . any earnest money held under the purchase agreement must be

distributed to, and become the sole property of, the party completing the

cancellation of the purchase agreement."); <u>id.</u>, subd. 7(d) ("[T]he affidavit of

cancellation, when delivered to a third party holding earnest money under the

purchase agreement, is a sufficient basis for that person to release the earnest

money to the party initiating and completing the cancellation.").

At a minimum, Streambend's receipt of the Notices of Cancellation in June

2006 triggered its duty to exercise reasonable diligence and determine whether

the Developers had constructed the parking ramp.  The Notices further gave

Streambend actual knowledge that its earnest money would be forfeited.

Streambend argues that the Notices of Cancellation were themselves

fraudulent because they accused Plaintiffs of breaching the Purchase Agreements

when Plaintiffs had not.  Plaintiffs should have known that the allegations

against them in the Notices of Cancellation were false at the time that they

received the Notices.

Streambend further asserts that, while, before November 29, 2007, it was

aware that Sexton Lofts had breached the Purchase Agreements, it was not aware

that Streambend had been defrauded.  It asserts that, through representations

made by Burnet Realty, the Developers represented to Streambend that they

intended to construct a parking garage and continued to represent an intent to

construct a parking garage.  For this proposition, Plaintiffs cite to the deposition

of Harold Brandt; however, this deposition has not been included as an exhibit;

nor is Brandt referenced in the SAC.  Streambend further concludes that

Defendants' representation that they would build a parking ramp was proven

false when, on September 18, 2009, the Developers surrendered title to the

development after failing to adequately fund the project during the lawsuit of

Bank of the West v. Sexton Lofts, LLC, 27-CV-07-17067.  (See SAC ¶ 58 ("The

Developers no longer have any recorded property interest in the

Development.").)  Streambend does not provide any details about the Bank of the

West lawsuit or any documents from that lawsuit.

Harold Brandt's testimony and the other evidence developed in <u>Bank of the West v. Sexton Lofts, LLC</u>, were not referenced in the SAC.  Streambend cannot rely on matters outside the pleadings to establish the sufficiency of its SAC.  In any case, the transcript from Brandt's deposition has not been produced, so the Court cannot evaluate the alleged quotation.  Therefore, the Court will disregard the reference to the deposition and avoid converting this motion to dismiss into one for summary judgment.  <u>See</u> <u>Casazza v. Kiser</u>, 313 F.3d 414, 417-18 (8th Cir. 2002).

The Court holds that, on the face of the SAC, Plaintiffs' ILSA claims are barred by the statute of limitations.  Therefore, Counts One and Two are dismissed with prejudice.

**C.    Failure to Plead with Particularity: Fraud (Count Four) and Negligent Misrepresentation (Count Nine)**

**1.    Legal Standard**

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Minnesota law considers an allegation of misrepresentation, "whether labeled as a claim of fraudulent misrepresentation or negligent misrepresentation [to be] an allegation of fraud which must be pled with particularity," and such a claim is subject to

Federal Rule of Civil Procedure 9(b).  <u>Trooien v. Mansour</u>, 608 F.3d 1020, 1028

(8th Cir. 2010) (citation omitted).  Both Count Four and Count Nine are subject to

Rule 9(b)'s particularity requirement.

> To satisfy Rule 9(b),
>
> the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.  In other words, the complaint must plead the "who, what, where, when, and how" of the alleged fraud.

<u>Drobnak v. Andersen Corp.</u>, 561 F.3d 778, 783 (8th Cir. 2009) (citations omitted).

The particularity requirement "is intended to enable the defendant to

respond specifically and quickly to the potentially damaging allegations.

[C]onclusory allegations that a defendant's conduct was fraudulent and

deceptive are not sufficient to satisfy the rule."  <u>Id.</u> (citations omitted).

### 2.    Discussion

With regard to Streambend's fraud and negligent misrepresentation

claims, the SAC fails to allege what the misrepresentations were.  Instead,

Streambend vaguely alleges that Burnet Realty "assisted and/or provided advice

in the preparation of misrepresentative sales documents and disclosure

materials." (SAC ¶ 32.)  It fails to identify what representations were made in which specific documents that were false.

In its response to Burnet Realty's motion, Streambend explains that the documents contained fraudulent misrepresentations regarding the parking ramp and the property to be transferred.  (SAC ¶¶ 44-46, 48, 50 (recounting misrepresentations contained in the Disclosure Statement, Purchase Agreement, and the Initial Declaration).)  However, this connection is not made in the SAC, where Streambend merely asserts that Burnet Realty assisted with general misrepresentative documents and later alleges that certain documents were fraudulent based on the parking ramp issue.  Additionally, Streambend fails to identify which particular documents connected to Burnet Realty contained the parking ramp misrepresentations, such as the Purchase Agreement and Initial Declaration or  advertising or promotional materials.

The SAC also alleges that Burnet Realty's agents made verbal misrepresentations on September 13 or 14, 2004, but does not specify what these representations were.  (SAC ¶ 34-36.)   Burnet Realty is not on notice of the contents of the alleged misrepresentations.

Streambend's failure to define, with particularity, the contents of the

misrepresentations is compounded by the fact that Streambend frequently refers

to misrepresentations by "Defendants" without specifying if Burnet Realty is

included in that group out of potentially eighteen different Defendants.  (See,

e.g., SAC ¶ 95 (stating that "Defendants" made false representations regarding

their intent to provide parking spaces at the date of closing and transfer the land

on which the parking structure was to be built).)  A plaintiff cannot plead fraud

by "attribut[ing] alleged false statements to 'defendants' generally."  Trooien, 608

F.3d at 1030 (citation omitted).

> [W]hen a complaint accuses multiple defendants of participating in
> the scheme to defraud, the plaintiff must take care to identify which
> of them was responsible for the individual acts of fraud.  If the
> requirements of Rule 9(b) were otherwise, a defendant would be
> forced to guess which allegations in the complaint were pleaded
> against it, rendering it difficult (if not impossible) to adequately
> frame a response, which is precisely the problem that Rule 9(b) was
> designed to remedy.

Moua v. Jani-King of Minn., Inc., 613 F. Supp. 2d 1103, 1111 (D. Minn. 2009)

(citations omitted).

Because Streambend fails to plead the content of the alleged

misrepresentations and fails to identify which misrepresentation allegations are

attributable to Burnet Realty, as opposed to the other Defendants, it has failed to

17

plead fraud with particularity.  The Court will dismiss Counts Four and Nine

under Rule 9(b).  However, the Court grants Plaintiffs 30 days from the date of

this Order to amend the SAC to plead fraud and negligent misrepresentation

with particularity.  If no amendment is made within 30 days, Counts Four and

Nine will be dismissed with prejudice.  Because the Court dismisses these counts

for failure to plead with particularity, it does not reach Burnet Realty's argument

that the Counts fail to state a claim upon which relief can be granted.

### D.      Unjust Enrichment (Count Seven)

Plaintiffs previously agreed to voluntarily dismiss Count Seven, Unjust

Enrichment, against Burnet Realty on the grounds that its unjust enrichment was

minimal.  Therefore, Count Seven is dismissed with prejudice.

### E.      Earnest Money (Count Eight)

Count Eight is brought under Minnesota Statute § 559.217, subdivision 2.

Count Eight of the SAC alleges:

> Streambend III and Streambend IV fully complied with all of their
> obligations under any purchase agreements.

> Defendants' wrongful actions as described in the allegations herein
> entitle Streambend III and Streambend IV to the return of their own
> earnest money.

> Streambend III and Streambend IV are justly entitled to the return of its earnest money deposits, plus interest.

(SAC. ¶¶ 120-23.)

Minnesota Statute § 559.217 permits cancellation of a residential purchase agreement through cancellation with the right to cure, id., subd. 3, or through declaratory cancellation, id., subd. 4.  Under either section, notice must be provided before a purchase agreement is terminated.  See Minn. Stat. § 559,217, subd. 5(a), (b).  Under a cancellation with the right to cure, which was sent in this case, the earnest money is forfeited if the purchaser fails to either take corrective action to comply with its obligations under the purchase agreement or seek an order from a district court suspending termination of the purchase agreement. Id., subds. 3, 5(a).

Alternatively, Minnesota Statute § 559.217, subdivision 2, provides that if, in response to one party's notice of cancellation, before that cancellation proceeding is completed, the other party responds with its own notice of cancellation under the statute,

> the purchase agreement is deemed canceled as of the date the second cancellation notice is served upon the other party to the purchase agreement under this section.  Either party may later pursue legal remedies at law to recover the earnest money.  A court shall make a determination of which party is entitled to the earnest

> money without regard to which party first initiated the cancellation
> proceeding and may consider the terms of the canceled purchase
> agreement in making its determination.

Here, Streambend does not allege that it responded with its own notice of

cancellation. Therefore, this subsection is inapplicable.

A purchaser who opposes cancellation must timely apply for and secure a

court order that suspends cancellation "until [its] claims or defenses are finally

disposed of by trial, hearing, or settlement." Minn. Stat. § 559.217, subd. 5(a). If

the purchaser fails to timely oppose cancellation, it forfeits its earnest money.

See Minn. Stat. § 559.217, subd. 7(a) ("After a cancellation . . . the purchase

agreement is void and of no further force or effect, and . . . any earnest money

held under the purchase agreement must be distributed to, and become the sole

property of, the party completing the cancellation of the purchase agreement.").

The statute explicitly provides that a third party, such as Burnet Realty, is

permitted to release the earnest money from escrow once cancellation occurs.

See id., subd. 7(d) ("[T]he affidavit of cancellation, when delivered to a third

party holding earnest money under the purchase agreement, is a sufficient basis

for that person to release the earnest money to the party initiating and

completing the cancellation.").

In June 2006, Streambend was served with a Notice of Cancellation under Minnesota Statute § 559.217, subd. 3 (cancellation with the right to cure).  The Notice of Cancellation, which followed the statutory form, conspicuously stated that Streambend would forfeit its earnest money deposits if it failed to close on the subject properties or contest the cancellation in district court and obtain an order suspending the termination of the Purchase Agreements.  In its SAC, Streambend has not alleged that it closed on the property, secured a court order to suspend cancellation, or served its own notice of cancellation to preserve its right to later recover earnest money in a separate proceeding.  Therefore, the earnest money was forfeited 30 days after the Notice was served in 2006.  Any claim Streambend had to recover earnest money under this statute was lost once the purchase agreements were cancelled and the time period to contest the cancellation expired.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

Defendant Burnet Realty LLC's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Docket No. 25] is **GRANTED** as follows:

1.    As to Burnet Realty LLC, Counts One, Two, Seven, and Eight are **DISMISSED WITH PREJUDICE**.

2.      As to Burnet Realty LLC, Counts Four and Nine are
        **DISMISSED**; however, the Court grants Plaintiffs 30 days
        from the date of this Order to amend the SAC to plead fraud
        and negligent misrepresentation with particularity.  If no
        amendment is made within 30 days, Counts Four and Nine
        are **DISMISSED WITH PREJUDICE**, and Burnet Realty LLC
        is **DISMISSED** as a Defendant in this case.


Dated:   January 8, 2012                s/ Michael J. Davis_____
                                        Michael J. Davis
                                        Chief Judge
                                        United States District Court