Streambend Properties III, LLC and
Streambend Properties IV, LLC,

**Civil File No.: 10-cv-4745 MJD/SER**

Plaintiffs,

v.

**REPORT AND**
**RECOMMENDATION**

Sexton Lofts, LLC; JJT LLC; JJT
Development, LLC, Heather Enterprises II,
LP; Medved, LP; MRM Management
Corp.; Sexton I, LLC; Regency
Commercial Services, LLC; Regency
Commercial Services, LC; Brett A.
Thielen; Robert T. Myers; Michael P.
Medved; Nedal Abul-Hajj; Burnet Realty,
LLC; John Doe; John Gamble, Mary
Rowe; and XYZ, Corp.,

Defendants.

Sara M. G. Rojas, Esq., Law Office of Sara M. G. Rojas, 431 South Seventh Street, Suite 2446, Minneapolis, Minnesota 55415, on behalf of Plaintiffs.

Christopher L. Goodman and Richard A. Lind, Esqs., Lind, Jensen, Sullivan & Peterson, P.A., 150 South 5th Street, Suite 1700, Minneapolis, Minnesota 55402, on behalf of Defendant Burnet Realty, LLC.

John J. Steffenhagen Esq., Hellmuth & Johnson, PLLC, 8050 West 78th Street, Edina, Minnesota 55439, on behalf of Defendants Sexton I, LLC and Nedal Abdul-Hajj.

Daniel C. Beck and Jacob B. Sellers Esqs., Winthrop & Weinstine, P.A., 225 South Sixth Street, Suite 3500, Minneapolis, Minnesota 55402, on behalf of Defendants Medved, LP and Michael P. Medved.

D. Charles Macdonald Esqs., Faegre Baker Daniels, LLP, 90 South 7th Street, Suite 2200, Minneapolis, Minnesota 55402, on behalf of Defendants MRM Management Corp., John Gamble, and James M. Myers.

STEVEN E. RAU, United States Magistrate Judge

The above captioned case comes before the undersigned United States Magistrate Judge on motions to dismiss filed by the following Defendants: Nedal Abul-Hajj, Sexton I, LLC ("Sexton Defendants") [Doc. No. 54]; Michael P. Medved, Medved LP ("Medved Defendants") [Doc. No. 79]; MRM Management Corp., and James M. Meyers as Managing Trustee for the Michael R. Myers Trust ("MRM Defendants") [Doc. No. 120]. This matter has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1. (Order of Referral dated Sept. 28, 2012) [Doc. No. 154].

## I. BACKGROUND

### A. Factual Background

The facts in this case are alleged as they appear in the Third Amended Complaint ("TAC") unless otherwise noted.[1] [Doc. No. 176]. Plaintiffs Streambend Properties III, LLC and Streambend Properties IV, LLC (collectively, "Streambend") are limited liability companies located in Eden Prairie, Minnesota. (TAC ¶¶ 4-5). Jerald Hammann ("Hammann") is the sole owner and Chief Manager of Streambend III and IV. (*Id.* ¶ 79, 36-37). The pleadings do not contain reference to any other directors, managers, employees or members of the Streambend entities.

There are eighteen Defendants in this case, which centers on a real estate development called Sexton Lofts, LLC ("the Development"), located at the corners of Seventh and Eighth Streets and Portland Avenue South in Minneapolis, Minnesota. (*Id.* ¶ 24). Streambend's dispute is with the investors who funded the Development. Streambend styles the Defendants as "Developers" and further divides them into "Initial Developers" and "Additional Developers,"

---

[1]    Although Streambend received permission to file the TAC, the Docket contains no evidence that Streambend ever properly served its TAC on any of the Defendants in this case.

depending on whether they became involved in the Development before or after May 2005. (*Id.* ¶¶ 29-30). The Sexton Defendants are among the "Initial Developers," while the Medved Defendants and MRM Defendants are all "Additional Developers," according to the TAC. (*Id.*).

Streambend alleges that in 2004, the Developers, acting through Burnet Realty, LLC ("Burnet"), offered condominiums in the Development for sale. (*Id.* at ¶ 33). While Burnet had the main responsibility for communicating with prospective condominium buyers, the Developers also allegedly "provided additional written communications, sent by U.S. Mail . . . intended to reassure Plaintiffs that their purchase decisions were sound," including an "external depiction of the Condominium Tower and adjacent four-story parking ramp." (*Id.* at ¶¶ 46-47). Streambend further alleges that Developers, again through Burnet, induced Streambend to sign sales documents and pay $18,800.00 ($9,400.00 per unit) in earnest money for Units 410 and 510 of the Development. (*Id.* at ¶¶ 47-49).

Streambend alleges that it entered into Purchase Agreements for Units 410 and 510 on or about November 4, 2004.[2] (*Id.* at ¶ 47). The Purchase Agreements each stated that two parking stalls would be included with each unit. (*Id.* at ¶ 50 (a)-(b)). Streambend alleges that Developers never constructed a parking ramp for the Sexton Lofts development despite their promise to do so, and that they were unwilling to convey marketable title to Units 410 and 510. (*Id.* at ¶¶ 51 (a)-(b), 54). Citing the Deposition of Harold Brandt, a Sexton representative, Streambend asserts that "Developers never intended to construct the parking ramp prior to the date they sought to

---

[2] This Court has grave doubts about the accuracy of this paragraph of Streambend's Complaint, which are discussed in detail in the "State Court Litigation" and "Procedural History" portions of this Report and Recommendation. In light of a Minnesota court's decision, the date November 4, 2004 is dubious at best. *See infra* at 13-18.

force closings on units in the Development, including the dates they attempted to force closings on the Purchase Agreements."[3]  (*Id.* at ¶ 53).

On June 1, 2006, Sexton Lofts, LLC, served Streambend Notices with Cancellation of Purchase Agreement for Units 410 and 510 ("the Notices") pursuant to Minn. Stat. § 559.217. (*Id.* ¶ 74) (Developers' Attempted Statutory Cancellation of the Unit 410 Purchase Agreement ("Unit 41 Cancellation Notice"), Ex. L, Attached to First Aff. of Sara M.G. Rojas "First Rojas Aff." ) [Doc. No. 39 at 1-2].  The Notices followed the Minnesota statutory form for cancellation of residential purchase agreements.  *See* Minn. Stat. § 559.217, subd. 5.

The Cancellation Notices alleged that Streambend defaulted in failing to close on Units 410 and 510 within thirty days after certificates of occupancy were issued.[4]  (TAC ¶ 76).  The Notices warned that the Purchase Agreements would be cancelled thirty days after service, unless, before that date, Streambend complied with the Purchase Agreements or secured a court order suspending termination of the Purchase Agreements pending a final decision on the merits. (Unit 410 Cancellation Notice at 2).  The Notices further warned that, if Streambend did not

---

[3]  Streambend does not attach the Brandt Deposition to the TAC or its affidavit in support of its Third Motion to Amend.  (First Rojas Aff.).  Months later, Streambend did supply excerpts of the Brandt Deposition in an affidavit filed with Plaintiff's Response to Defendants Medved LP's and Michael P. Medved's Amended Motion to Dismiss Pusuant to Fed. R. Civ P. 12(b)(6). [Doc. No. 115]; (Excerpts from the Dep. Of Harold Brandt on Aug. 1, 2007, Ex. B Attached to Fourth Aff. of Sara M.G. Rojas "Fourth Rojas Aff.") [Do. No 116].  This Report and Recommendation is not Streambend's first notice that it has failed to attach a key exhibit to its various versions of the Complaint; Chief Judge Davis also noted the Brandt Deposition's absence. (Mem. of Law and Order Dated Jan. 9. 2012) [Doc. No. 34 at 13].  Because of this it is difficult to evaluate Brandt's deposition testimony without converting these Motions to Dismiss into motions for summary judgment.  *See Casazza v. Kiser*, 313 F.3d 414, 417-418 (8th Cir. 2002).

[4]  Streambend contends that the Notice relating to Unit 410 was procedurally improper, because it alleges that Minneapolis issued the certificate of occupancy for Unit 410 on June 5, 2006.  (TAC ¶¶ 77-78).  Streambend alleges that the City issued a certificate of occupancy for Unit 510 on April 24, 2006.

comply or secure a court order, it could lose its earnest money, and may lose its right to assert claims or defenses.  (*Id.*)

According to the TAC, after Streambend's title in the units was terminated, another real estate company marketed the units for $552,250.00 each, including one garage stall each.  (TAC ¶ 86).  A similar unit sold in October 2006 at a price of $567,000.00.  (TAC ¶ 87).  Streambend asserts, therefore, that it was deprived of the increase in value to Units 410 and 510, along with the accompanying parking spaces, and the value of the overall development.  (*Id.* ¶ 89-90).  It also asserts that it was deprived of its earnest money deposits totaling $18,800.00.  (*Id.* ¶ 91).

These factual allegations provide the basis for the following claims: Count I, Violation of 15 U.S.C. § 1703(a)(2)(B) (Interstate Land Sales Act "ILSA"); Count II, Violation of 15 U.S.C. § 1703(a)(2)(A) and (C) (ILSA); Count III, Violation of Minn. Stat. 515B *et seq.* (Minnesota Common Interest Ownership Act ("MCOIA"); Count IV, Fraud; Count V, Wrongful Cancellation (Against Sexton Lofts, LLC); Count VI, Breach of Contract (against Sexton Lofts, LLC); Count VII, Unjust Enrichment, Count VIII Minn. Stat. 555.01 (Declaratory Judgment); Count IX, Negligent Misrepresentation (against Developers); Count X, Negligent Misrepresentation (against Burnet).

### B.  The State Court Litigation

After receiving the Notices, Hammann initiated legal action in the Minnesota courts in an attempt to suspend the cancellation of the Purchase Agreements.  ("State Court Litigation"). *Hammann v. Sexton Lofts, LLC*, File No. 27-CV-06-12214 (Minn. Dist. Ct., Nov. 26, 2007). Hammann served Sexton Lofts, LLC, with a summons and complaint in Hennepin County District Court in June 2006.  (Findings of Fact, Conclusions of Law, Order and Mem. of Law "State Ct. Decision," Ex. O. Attached to Declaration of Sara M.G. Rojas) [Doc. No. 180 at Ex. O

at 3 ¶ 14].   Hammann's state court suit alleged unjust enrichment, breach of contract, fraud, misrepresentation, and violation of the Minnesota Common Interested Ownership Act (MCOIA), and sought $885,158.00 in damages.  (*Id.* at 5).  On July 18, 2006, Hamman sought injunctive relief to prevent Sexton Lofts, LLC, from canceling the purchase agreements between Streambend and Sexton Lofts, LLC.  (*Id.* at 3 ¶ 15).  Hammann represented himself at the hearing.  Neither Streambend entity was a party to the motion, although both are referred to throughout the record of the State Court Litigation.  (*Id.*).

The court denied Hammann's motion for injunctive relief the day after the hearing.  (*Id.*) A few months later, Hammann, again *pro se*, filed a document entitled "Plaintiff's Memorandum in Support of Motion to Amend Complaint and Motion for Summary Judgment." (*Id.* at 3 ¶ 16); (Pl.'s Mem in Supp. of Mot.  to Am. Compl. and Mot. for Summ. J., Ex. 2 Attached to Aff. of Trista M. Roy "Roy Aff.") [Doc. No. 136].  Several months later, through an attorney, Hamman submitted an amended complaint to the Hennepin County Court.  (*Id.*  at 3 ¶ 17).  He moved for summary judgment in July 2007; Sexton Lofts, LLC, filed a motion for summary judgment the next day.  (*Id.*); (Pl.'s Mem in Supp. of Mot. for Summ. J., Ex. 3 Attached Roy Aff.).

Hennepin County District Court Judge William R. Howard presided over a trial on August 30, 2007.[5]  (State Ct. Decision at 1).  Both Hammann and Sexton Lofts, LLC, were represented by counsel; a third-party plaintiff, Schleck & Associates, PA, did not appear.  (*Id.*). Judge Howard issued his judgment and order on the matter on November 26, 2007.  Judge Howard's Findings of Fact included the following:

---

[5]     The State Court Decision refers to the proceedings as a "trial" although the substance of the Decision looks more like a motion for summary judgment.   This Report and Recommendation defers to Judge Howard's phrasing.

1. Plaintiff Jerald Alan Hammann (Hammann), a Minnesota resident, is a licensed Certified Public Accountant (Inactive) and is a licensed real estate professional in Minnesota.

2. Streambend[6] Properties III, LLC (Streambend III) and Streambend Properties IV, LLC (Streambend IV) are both Minnesota limited liability companies. Neither Streambend III nor Streambend IV are parties in this lawsuit. Hammann is the president of both entities. Streambend and Streambend IV were registered as Minnesota limited liability companies on October 29, 2004.

3. Defendant Sexton Lofts, LLC (Sexton) is a Minnesota limited liability company. Sexton is a successor in interest to JJT Development, LLC and JJT, LLC (JJT), both Minnesota limited liability companies . . .

4. On October 27, 2004, JJT signed a New Construction Purchase Agreement with Streambend III for Unit 510 of the development. The signature box of the agreement indicated that Streambend III was the buyer; Jerald A. Hammann signed on behalf of Streambend III . . .

5. On October 27, 2004, JJT signed a New Construction Purchase Agreement with Streambend IV for Unit 410 of the development. The signature box of the agreement indicated that Streambend IV was the buyer; Jerald A. Hammann signed on behalf of Streambend IV . . .

(*Id*. at 3 ¶¶ 1-4).

Judge Howard made the following conclusions of law:

1. The sole Plaintiff in this litigation is Jerald Alan Hammann.
2. Neither Streambend Properties III, LLC nor Streambend Properties IV, LLC is a party to this litigation.
3. The contract between Streambend Properties III, LLC and JJT, LLC is void because Streambend Properties III, LLC did not exist at the time of the contract.
4. The contract between Streambend Properties IV, LLC and JJT, LLC is void because Streambend Properties IV, LLC did not exist at the time of the contract.

(*Id*. at 4 ¶¶ 1-4).

Judge Howard then denied both summary judgment motions with prejudice, but ordered

Sexton Lofts, LLC, to pay Hammann $18,800.00 in earnest money. (*Id*. at 4). He also ruled that

"any and all damage claims are without merit and are dismissed." In his Memorandum of Law,

Judge Howard explained his reasoning:

---

[6]     Throughout the State Court Decision, Streambend is referred to as "Streambed," an apparent typographical error. In the interest of consistency, this Report and Recommendation employs the correct spelling even when quoting the State Court Decision.

Since Hammann sought limited liability protection after the two purchase agreements were signed, this Court must examine if Streambend III and Streambend IV had the power to contract. The purchase agreements were signed on October 27, 2004; Streambend III and Streambend IV did not come into existence until October 29, 2004. As a result, both purchase agreements are void . . . Any alternative result would lead to "a form of future interest to vest in unorganized entities and be inconsistent with our public policy."

(*Id.* at 6-7) (citing *Stone v. Jetmar Properties, LLC*, 733 N.W.2d 480, 487 (Minn. App. 1990)). The Hennepin County Court entered judgment on December 27, 2007. Hammann decided not to appeal the State Court Decision. (Pls.' Resp. to Defs. MRM Management Corp. and James M. Myers, as Trustee for the Michael R. Myers Trust's Mot. for Sanctions) [Doc. No. 179 at 19].

### C. Procedural History

Streambend filed the Complaint in this matter on November 29, 2010. A month later, Streambend filed an Amended Complaint as a matter of course under Rule 15(a)(1). [7] (Am. Compl. "First Am. Compl.") [Doc. No. 3]. Defendant Burnet waived service and moved to dismiss Streambend's complaint in March 2011. (Def. Burnet Realty LLC's Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)) [Doc. No. 6]. While Chief Judge Michael J. Davis considered Burnet's Motion to Dismiss, Streambend filed its first Motion for Leave to Amend Complaint under Fed. R. Civ. P. 15(a)(2), which this Court granted on June 20, 2012. (Notice of Hearing for Pls.' Mot. for Leave to Am. Compl.) [8] [Doc. No. 13]; (Order dated June 20, 2011) [Doc. No. 20].

---

[7] As outlined below, Streambend has had numerous opportunities to plead its claims. A fourth motion to amend the Complaint is currently pending before this Court. (Pls.' Mot. for Leave to Am. Compl.) [Doc. No. 171].

[8] Streambend styled its Motion, apparently erroneously, as a "Notice of Hearing." However, the content of this document makes clear that it is a Motion, not a notice of hearing. An actual notice of hearing is found at Doc. No. 14 of the ECF record. For the purposes of this Report and Recommendation, Doc. No. 13 will be cited as "Second Motion for Leave to Amend Complaint."

On January 9, 2012, Chief Judge Davis dismissed Counts I, II, VII, and VIII of Second Amended Complaint (SAC) [Doc. No. 21] with prejudice as to Burnet. (Mem. of Law and Order Dated Jan. 9. 2012, "Jan. 2012 Order") [Doc. No. 34]. He allowed Streambend an additional thirty days to plead its fraud and negligent misrepresentation claims (Counts IV and IX) with more particularity or Burnet would be dismissed from the case. (*Id.* at 22). In response to the Chief Judge's order, Streambend filed another Motion for Leave to Amend Complaint on February 9, 2012 ("Third Mot. to Am."). [Doc. No 37].

At the oral argument on Streambend's Third Motion to Amend in March 2012, this Court learned that Streambend failed to serve properly seventeen of the eighteen defendants for over fifteen months. Pursuant to Federal Rule of Civil Procedure 4(m), Streambend was ordered to serve all defendants properly and file proof of service on CM/ECF within 20 days (Order Dated Mar. 28, 2012) [Doc. No. 53]. After receiving service, seven defendants filed motions to dismiss: Nedal Abul-Hajj, Sexton I, LLC [Doc. No. 54], Brett A. Thielen [Doc. No. 76], Michael P. Medved, Medved LP [Doc. No. 79], MRM Management Corp., and James M. Meyers [Doc. No. 120].[9]

This Court issued an order granting in part and denying in part Streambend's Third Motion to Amend. (Order dated June 12, 2012 "June 2012 Order")) [Doc. No. 127]. The June 2012 Order granted Streambend's requests to remove Michael Medved as a party, add additional facts, amend its MCIOA claim (Count III), remove Burnet from its unjust enrichment claim (Count VII), add a claim under the Minnesota Declaratory Judgments Act, Minn. Stat. § 515.4-

---

[9] Mr. Thielen is *pro se* and was incarcerated during most of the proceedings referenced above. Defendant Brett A. Thielen's motion was referred to the undersigned and addressed in a separate Report and Recommendation. (Order of Referral dated April 25, 2012) [Doc. No. 77]; (Report and Recommendation dated June 20, 2012) [Doc. No. 128]. Chief Judge Michael J. Davis adopted the recommendation in part and denied it in part. Thielen is still a party to this case. (Order dated July 10, 2012) [Doc. No. 142].

106(b (Count VIII), and add additional equitable relief.  The Order denied Streambend's request to amend its ILSA claims (15 U.S.C. § 1711(a)(2)) (Counts I and II) and its fraud and negligent misrepresentation claims (Counts IV, IX, and X).

Streambend objected to the June 2012 Order.  (Pls.' Objections to Magistrate Judge's Order Granting in Part and Den. In Part Pls.' Mot. to Am. "Objection") [Doc. No. 132].  Chief Judge Davis reversed this Court with respect to Streambend's fraud and negligent misrepresentation claims, but otherwise affirmed the June 2012 Order.  (Order dated Sept. 28, 2012) [Doc. No. 152].  Streambend also filed a letter requesting permission to file a motion to reconsider the January 2012 Order, arguing that Chief Judge Davis's decision was "erroneous and overreaching."  (Letter dated July 2, 2012 "July 2 Letter") [Doc. No 138 at 2].

Streambend made reference to the State Court Decision in both its Objection and July 2 Letter providing this Court with its first notice that another court had previously ruled on the dispute.  (Objection at 6); (July 2 Letter at 2).  Chief Judge Davis observed that the discovery of the State Court Decision raised "troubling questions regarding *res judicata* and the *Rooker-Feldman* doctrine."  (Mem. of Law and Order dated Sept. 28, 2012 "Sept. 2012 Order") [Doc. No. 153 at 4].  Chief Judge Davis also reaffirmed his decision to dismiss Counts I, II, VII, and VIII in the January 2012 Order.  (*Id.* at 2, 5, 6).

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true.  *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide

the grounds of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do.

(*Id.*). (citations omitted).

In deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." *PureChoice, Inc. v. Macke*, No. 07cv1290 (DWF/SRN), 2007 WL 2023568, at *5 (D.Minn. July 10, 2007) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). The State Court Decision and pleadings from the State Court Litigation are matters of public record.

## III. DISCUSSION

The Report and Recommendation first addresses the improper inclusion of Burnet Reality as a defendant in some portions of the TAC. Next, the status of Mr. Michael Medved is discussed. Finally, the Report and Recommendation analyzes the effect of the State Court Litigation on the instant case, and addresses the remaining counts.

### A. Improperly Pleaded Claims Relating to Burnet Realty in the TAC

In the January 2012 Order, Chief Judge Davis dismissed with prejudice Counts I (Violation of ILSA), II (Violation of ILSA), VII (Unjust Enrichment) and VIII as they pertained to Burnet. (Jan. 2012 Order at 21). He allowed Streambend thirty days to amend Counts IV and IX to plead fraud and negligent misrepresentation with particularity. (*Id.* at 22).

As stated above, Streambend then filed its Third Motion to Amend, which this Court granted in part and denied in part.[10] (Third Mot. to Am.); (June 2012 Order at 15). Streambend appealed that order to Chief Judge Davis, who affirmed the June 2012 Order in part and reversed

---

[10] While most of the proposed TAC added detail and removed some parties, Streambend made a major change to Count Eight, switching it from a claim under Minn. Stat. 559.217(2) to a claim for declaratory judgment under Minn. Stat. §555.01. In addition, Streambend added Burnet Realty to Count III, its MCOIA claim.

it in part. (Sept. 2012 Order). Specifically, Chief Judge Davis allowed Streambend to amend

their fraud and negligent misrepresentation claims, Counts IV, IX, and X. (*Id.* at 3).

Nothing in the Chief Judge's Order reinstated Burnet as a defendant to Streambend's

ILSA-based claims (Counts I and II) or Unjust Enrichment (Count VII).[11] Yet inexplicably, the

TAC still names Burnet as defendants to those claims in direct violation of the Chief Judge's

January 2012 Order. Having no logical or legal justification for continuing to name Burnet as a

defendant in those Counts of the TAC, this Court can only reiterate Chief Judge Davis's

dismissal of those counts as to Burnet Realty—they remain dismissed.

### B.  The Status of Michael Medved with Respect to the Instant Litigation

On June 6, 2012, Michael P. Medved ("Mr. Medved") filed a Notice of Bankruptcy,

alerting this Court to his bankruptcy petition in the District of Arizona. [Doc. No. 126]. In its

Third Motion to Amend, Streambend moved to voluntarily dismiss Defendant Michael P.

Medved in light of his bankruptcy proceeding. (Pls.' Mem. in Supp. of Mot. to Am.) [Doc. No.

38]. The Medved Defendants' Motion to Dismiss was filed in April 2012, before this Court had

issued its June 2012 Order granting Streambend's Third Motion to Amend. In the Medved

Defendants' Motion to Dismiss, they request that the Court dismiss all claims against Mr.

Medved. (Def. Medved LP's and Michael P. Medved's Mot. to Dismiss Pursuant to Fed. R. Civ.

P. 12(b)(6) "Medved Defs.' Mot. to Dismiss") [Doc. No. 79].

A word of clarification on the status of Mr. Medved is therefore appropriate. This Court

granted Streambend's request to remove Mr. Medved as a defendant in its June 2012 Order,

noting that while some circuits have held that voluntary stipulations of dismissal must apply to

---

[11]    Indeed, Chief Judge Davis has made clear that his January 2012 Order stands:
"[Streambend's] motion for reconsideration does not permit Plainffis a fourth bite at the apple as
to Burnet Realty."

all defendants to be valid, the District of Minnesota and the Eighth Circuit have not adopted such a rule. (June 2012 Order at 6) (citing *Graco, Inc. v Techtronic Inds. of North Am., Inc*, No. 09-1757 (JRT/RL) 2010 WL 915213, a *2 (D. Minn. Mar. 9. 2010); *Alholm v. Am. S.S. Co.*, 167 F.R.D. 75, 79 (D. Minn. 1996).

Since Streambend's voluntary dismissal was unopposed and not subject to Mr. Medved's bankruptcy stay, no reason to deny it existed. While the June 2012 Order provides a complete discussion of Streambend's voluntary dismissal of Mr. Medved, it is worth reiterating here that, at Streambend's own request, Mr. Medved is no longer a party to this action and all claims against him are dismissed. (June 2012 Order at 15). Claims against Medved LP, however, are discussed below.

### C. The Effect of the State Court Litigation on the Instant Action

Having dispatched with some of the "low-hanging fruit" in the three Motions to Dismiss, the Court now turns to the belated discovery of Judge Howard's decision and order. Needless to say, the discovery of the State Court Decision has altered the nature of this case. Since learning that Judge Howard previously ruled on most of the questions before this Court, the critical question is: What is the effect of Judge Howard's decision on the instant matter?

Judge Howard decided that the Purchase Agreements for Units 410 and 510 were void because neither of the Streambend entities existed at the time Hammann signed the Purchase Agreements. (State Ct. Decision at 4). State judicial proceedings must be given "the same full faith and credit" in the federal courts as they would receive in the courts of the rendering state. 28 U.S.C. § 1738. So, a federal court must give a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466–67 (1982); *see also* Restatement (Second) of

Judgments § 86. In *Kremer*, the Supreme Court interpreted Section 1738 to mean that the doctrines of "*res judicata* and collateral estoppel [apply] to causes of action and issues decided by state courts." *Kremer*, 456 U.S. at 466 n.6. Full faith and credit, as expressed in Section 1738, is a vehicle by which federal courts can demonstrate their respect for the finality and legitimacy of a state court decision.

The Supreme Court held that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). This principle "preclud[es] parties from contesting matters that they had a full and fair opportunity to litigate," and promotes certainty, consistency, and reliance on adjudication. *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996) (citing *McCurry*, 449 U.S. at 94).

> These interests are similarly implicated when nonparties assume control over a litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved . . . [P]ersons for whose benefit and at whose direction a cause of action is litigated cannot be said to be strangers to the cause . . . [O]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own is as much bound as he would be if he has been a party to the record. Preclusion of such nonparties falls under the rubric of collateral estoppel . . .

*Montana v. United States*, 440 U.S. 147, 154 (1979) (internal quotations and citations omitted).

As Chief Judge Davis noted, there are troubling *res judicata* issues in this case. "*Res judicata* is often analyzed . . . to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) (internal citation omitted). Under Minnesota law, the application of collateral estoppel to preclude re-litigation of an issue requires the following elements:

(1) the issue was identical to one in a prior adjudication;
(2) there was a final judgment on the merits;
(3) the estopped party was a party or in privity with a party to the prior adjudication; and
(4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Hoyt v. Goodman*, No. 10-cv-3680 (SRN/FLN), 2012 WL 1094438, *5 (D. Minn. Apr. 2, 2012) (citing *Pope Cnty. Bd. of Comm'rs v. Pryzmus,* 682 N.W.2d 666, 669 (Minn. Ct. App. 2004)). Under Minnesota law, mutuality of all parties is not required for invocation of collateral estoppel. *Minneapolis Comm. Dev. Agency v. Buchanan*, 268 F.3d 562, 566 (8th Cir. 2001) (citing *Lyon Fin. Servs., Inc. v Waddill*, 625 N.W.2d 155, 158-59 (Minn. Ct. App. 2001)).

Minnesota's collateral estoppel law applies to Streambend's claims. The first two elements of the Minnesota test are easily satisfied. Hammann's state court claims were virtually identical to Streambend's federal claims, except for the ILSA claims. In the State Court Litigation, Hammann alleged unjust enrichment, breach of contract, fraud, misrepresentation, and violation of the MCOIA. (State Ct. Decision at 5). The TAC alleges all those claims as well. (TAC ¶¶ 118-139, 143-154, 160-165).

Second, as outlined above, Judge Howard's decision was a final judgment on the merits. Judgment was entered, and Hammann did not appeal. Streambend states that Hammann decided not to appeal because he felt he could not "swim against the strong current of a 'clearly erroneous' standard as to [the] factual allegations." (Pls.' Resp. to Defs. MRM Management Corp. and James M. Myers, as Trustee for the Michael R. Myers Trust's Mot. for Sanctions) [Doc. No. 179 at 19].

Third, Hammann is in privity with Streambend III and IV. To determine privity under Minnesota law, courts "must carefully examine the circumstance of each case." *Margo–Kraft Distribs., Inc. v. Minneapolis Gas Co.*, 200 N.W.2d 45, 47 (Minn. 1972). "There is no prevailing

definition of privity which can be automatically applied." *Id.* (citing *McMenomy v. Ryden*, 148 N.W.2d 804, 807 (Minn. 1967)). Privity includes "those who control an action although not parties to it; those whose interests are represented by a party to the action; [and] successors in interest to those having derivative claims." *Id.* at 47–48 (quoting Restatement (First) of Js. § 83, cmt. a (1942) (internal quotations omitted)). A party is in privity if it demonstrates a "controlling participation and active self-interest" in the litigation. *Margo-Kraft Distribs., Inc.*, 200 N.W.2d at 278.

Hammann is the Chief Manager and sole owner of Streambend. The pleadings do not contain reference to any other officers, employees, or members of the board. (TAC ¶ 36-37, 79). Throughout these proceedings and the State Court Litigation, Hammann has taken an active role in prosecuting claims against Sexton Lofts, LLC, on behalf of the Streambend entities, demonstrating his interest in the cases and his control over them. Streambend has alleged no facts that clearly delineate between its interests and Hammann's—the two are so closely aligned as to be indistinguishable. In the State Court Litigation, Hammann's Motion for Summary Judgment contained the following assertions:

> Any harm done to Streambend III or Streambend IV is a direct harm to him as well as all profits are and losses are his and no others. All assets of the company ultimately belong solely to him. This suit is brought to recover the profits and assets he has lost because of defendant's actions.

(Pl.'s Mem in Supp. of Mot. for Summ. J., Ex. 3 Attached to Aff. of Trista M. Roy "Roy Aff.") [Doc. No. 136] (grammatical errors in original). This Court has no doubt, therefore, under Minnesota law, Hammann is in privity with Streambend III and IV.

Finally, and perhaps most importantly, Minnesota courts afforded a full and fair opportunity to litigate issues concerning Sexton Lofts Units 410 and 510. Throughout the course of the State Court Litigation, Judge Howard heard Hammann's motion for injunctive relief, as

well as his motion for summary judgment, and made decision on the merits following a trial. (State Ct. Decision at 3 ¶ 15-17). Judge Howard wrote that the Hennepin County District court "granted Hammann extraordinary latitude – even allowing a 'do-over' of his amended complaint in an effort to allow him to correct obvious errors in his pleading." (State Ct. Decision at 6). There is no doubt that the State Court Litigation was fully and fairly litigated.

Having determined that the State Court Decision meets the Minnesota standard for collateral estoppel, this Court must acknowledge that Judge Howard decided that Streambend did not exist on October 27, 2004, and therefore never made a valid contract to purchase Units 410 and 510 of Sexton Lofts. Streambend attempted to argue that valid contracts existed in its State Court Litigation filings,[12] but Judge Howard's decision completely discredited this concept. (TAC at ¶ 47).

While the standard for a Motion to Dismiss requires a court to accept a plaintiff's complaint as true, when a competent court in another jurisdiction has decided a particular allegation is false, the principles of comity and full faith and credit take precedence. Accordingly, this Report and Recommendation adheres to Judge Howard's findings. To do otherwise is do an end-run around the decision of another court.

Because there was no valid contract, this Court recommends first that Streambend's claims against Sexton Lofts, LLC should be dismissed. Sexton Lofts, LLC, (as opposed to Sexton I) has not appeared in this case, but the principles outlined in *Kremer*, *McCurry*, and *Montana*, *supra*, nonetheless compel this Court to respect the finality of Judge Howard's decision, and refuse to entertain claims against Sexton Lofts, LLC, previously litigated in

---

[12]     *See e.g.*, Plaintiff's Memorandum in Support of Motion for Summary Judgment, Ex. 3 Attached to Roy Affidavit. ("Issue II: Whether two contracts exist for the purchases of Units 410 and 510 between the parties. This issue is answered in the affirmative . . .")

Minnesota State courts.[13]  Thus Count VI (Breach of Contract against Sexton Lofts, LLC) is without merit and invalid on its face.  Since the State Court Decision held that the contract between Streambend and Sexton Lofts, LLC, was void, breach of contract or purchase agreement is impossible.  Secondly, Count V (Wrongful Cancellation against Sexton Lofts, LLC) is likewise without merit.  Purchase agreements that are invalid cannot be cancelled, wrongfully or otherwise.

It is worth observing that Count VI could also be dismissed on grounds of claim preclusion (*res judicata*), because Count VI is essentially a rehashing of the State Court Litigation.  The sole defendant to that claim is Sexton Lofts, LLC, the defendant in the State Court Litigation, and the Streambend is in privity with Hammann, the state court plaintiff.  Claim preclusion also applies to claims against Sexton Lofts in Counts III (Violation of MCOIA), IV (Fraud), VII (Unjust Enrichment), and IX (Negligent Misrepresentation), because those claims were also asserted and decided in the State Court Litigation.

### D.  Interstate Land Sales Act Claims (Counts I and II) are Statutorily Barred.

The discovery of the State Court Decision also strengthens the analysis of the ILSA claims in Chief Judge Davis's January 2102 Order, because the State Court Decision reveals that Streambend's sole owner and Chief Manager did in fact know that the parking lot would not be built.  That fact was a central allegation in the State Court Litigation, illustrating that the central facts at issue in this case were known nearly four years before Streambend filed the instant action.

---

[13]    Further, a Magistrate Judge is empowered to recommend any disposition to the district court that is within the district court's power to grant.  *See* 28 U.S.C. § 636(b)(1)(B); D. Minn. L.R. 72.1(b).  A district court may dismiss a complaint *sua sponte* under Rule 12(b)(6) as long as the dismissal does not precede service of process.  *Smith v. Boyd*, 945 F.2d 1041 (8th Cir. 1991).  While service of process in this case has indeed been poorly executed, Streambend did attempt to serve Sexton Lofts, LLC, on April 11, 2012.  (Service of Process) [Doc. No. 60].

Streambend commenced this action on November 29, 2010. An ILSA action must be filed within "three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 1711(a)(2). Judge Davis' January 2012 Order dismissed Counts I and II against Burnet with prejudice because these claims are barred by the Interstate Land Sales Act's ("ILSA") three-year statute of limitations. (Jan. 2012 Order at 10). The ILSA statute imposes on purchasers a duty to "exercise . . . reasonable diligence" in discovering ILSA violations. *Id.*

With respect to Streambend's knowledge of the fact that a parking ramp would not be built, Judge Davis reasoned: "At a minimum, Streambend's receipt of the Notices of Cancelation in June 2006 triggered its duty to exercise reasonable diligence to determine whether the Developers had constructed the parking ramp." (*Id.* 12). In 2006, Streambend did not simply "exercise reasonable diligence," it actually commenced a lawsuit, complete with discovery, depositions, and a motion for summary judgment.

It is nonsensical, then, for Streambend to now argue that it did not know the Development might not proceed as promised when its sole owner and Chief Manager litigated that very issue as early as 2006. Streambend argues that that its ILSA claims are not statutorily barred, because "some allegations . . . on their fact related to periods extending beyond June 2006," but that is precisely when Hammann went to the Minnesota Courts with a claim almost identical to the one currently before this Court. (Pls.' Resp, to Defs. Medved LP's and Michael P. Medved's Am. Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)) [Doc. No 115 at 13].

Indeed, the very language of Hammann's State Court filings plainly shows Hammann was aware that there were problems with the parking structure plans. Hammann's State Court Motion for Summary Judgment alleges, "Sexton admits that it had no intent to assign Hammann

parking stalls in accordance with the purchase agreement on the Closing of either of his two Purchase Agreements." (Pl.'s Mem. in Supp. Of Mot. to Am. Compl. and Mot. for Sum. J. at 5 ¶ 18, Ex. 2 Attached to Roy Aff.). "Sexton admits it had no intent to grant to Hammann an easement to the parking structure accordance [*sic*] with the Initial Declaration and the Initial Parking Easement on the Closing of either of his two Purchase Agreements." (*Id.* at 6 ¶ 20). Hammann had enough certainty that there was a problem with the parking structure plans to file suit in his own name; as sole owner and Chief Manager of Streambend III and IV, he was the only person equipped to decide whether Streambend would file suit.

Accordingly, Counts I and II should be dismissed as to all Defendants for the same reasons Chief Judge Davis articulated in the January 2012 Order. "Streambend knew, or reasonably should have known, of the facts giving rise to an ILSA claim more than three years before this action was commenced on November 29, 2010 . . ." (January 2012 Order at 10). The statute of limitations bars both Counts as to all Defendants.

### E.  Streambend's MCOIA Claim (Count III) Should be Dismissed.

Streambend's MCIOA asserts claims against Burnet and the Developers. The January 2012 Order did not rule on the merits of the MCOIA claims because Burnet, the defendant that filed the motion to dismiss, was not named in this count in the SAC. (SAC at ¶¶ 86-93). The TAC, however, asserts MCOIA claims against Burnet and the Developers, which this Report and Recommendation now addresses. (TAC ¶ 119).

The State Court Decision has significant impact on Streambend's MCIOA claims. The MCIOA defines a "purchaser" as an individual "other than a declarant, who by means of voluntary transfer acquires legal or equitable interest in a unit." Minn. Stat. § 515B.1-103. Minn. Stat. § 515B.4-116(a) allows any "adversely affected" person to recover "damages,

attorney's fees, costs or expenses, whether authorized by this chapter or otherwise. . . ." These "liberally administered" remedies are "not exclusive and do not abrogate any remedies under other statutes or common law" and are supplemented by "the principles and law of equity." *Id.* at §§ 515B.1-108, 515B.1-114, 515B.4-116(c).

In *Streambend Props., LLC v. Carlyle Condos, LLC et al*, No. 09cv2102 (JRT/AJB), 2011 WL 4538408, at *5 (D. Minn. Apr. 18, 2011), Streambend's similar MCIOA claim that the defendants in that action violated Minn. Stat. §§ 515B.1-113, 515B.4-102, was dismissed with prejudice. *Streambend Props., LLC v. Carlyle Condos, LLC et al*, No. 09cv2102 (JRT/AJB) 2011 U.S. Dist. LEXIS 116122, at *52-54 (D. Minn. Apr. 18, 2011) *adopted in part, overruled in part on other grounds by Streambend*, 2011 WL 4538408, at *5. Magistrate Judge Arthur J. Boylan reasoned that Streambend was not a "purchaser" under the MCIOA and that Streambend's claim was barred under the election of remedies doctrine. *Streambend*, 2011 U.S. Dist. LEXIS 116122, at *50-54.

Here again, Streambend is not a "purchaser" under the meaning of the MCOIA, but this time for a different reason: the State Court Decision held that Streambend's purchase agreements were void. In his Memorandum of Law, Judge Howard observed that Minnesota does not acknowledge the *de facto* corporation doctrine. (State Ct. Decision at 6). In the State Court Decision, Judge Howard cited *Jetmar Properties*, in which the Minnesota Court of Appeals wrote: "The rationale for the abolition of *de facto* corporations is that the process for incorporating is so simple that no one could ever make a 'colorable attempt' to incorporate and fail." 733 N.W. 2d at 485. Recognizing business transactions purportedly made before an LLC came into existence would lead to "a form of future interest to vest in unorganized entities [and] be inconsistent with our public policy." *Jetmar Props.*, 733 N.W. 2d at 487. Because Minnesota

law is so clear on this issue, this Court cannot find that Streambend III and IV were "purchasers" under the MCOIA. Streambend simply never made a valid "voluntary transfer [to acquire] a legal or equitable interest in a unit." Minn. Stat. 515B.1-103(28). Streambend's MCOIA claims are grounded in its purported status as a purchaser, and so should be dismissed as to all defendants in light of *Jetmar Properties* and the State Court Decision.

### F. Streambend's Fraud and Misrepresentation Claims Should be Dismissed

Judge Davis held that Streambend's fraud and negligent misrepresentation claims with respect to Burnet (Counts IV and IX) failed to satisfy the heightened pleading requirements of Rule 9(b). (Jan. 2012 Order at 17-18). Streambend was allowed 30 days to plead these claims with more particularity. (*Id*. at 18, 22). The TAC attempts to plead these allegations with more detail as to the substance of the purportedly false representations and by clarifying whether Burnet was included in the summary group of Developers. Streambend's attempts in this regard, however, are unsuccessful.

Fraud claims must be plead with heightened specificity under Rule 9(b). Fed. R. Civ. P. 9(b) states that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." This means that a claimant must allege the "who, what, where, why, and how" of fraudulent conduct. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549-50 (8th Cir. 1997). Conclusory statements that a defendant engaged in fraud or deceptive conduct "are not sufficient to satisfy Rule 9(b)." *Comm. Prop. Invs., Inc v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995).

"The required elements of a fraud action are: (1) there was a false representation by a party of a past of existing fact susceptible of knowledge; (2) made with the knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether

it was true or false (3) with the intention to induce another to act in reliance thereon; (4) that the representation cause the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance." *Specialized Tours, Inc. v Hagen*, 392 N.W.2d 520 (Minn. 1986). Each element must be satisfied in order to establish a claim of fraud.

Because the State Court Decision ruled that the Purchase Agreements were void, and Streambend did not exist at the time of the signing of the Purchase Agreements, this court cannot accept that Streambend meets the fourth element. There was no action in reliance on a promise if the purchase agreements are void. Nor can a nonexistent entity rely upon an agreement to which it is not legally a party. Even supposing that the State Court Decision was not decided as it was, it is troubling that most of the statements Streambend identifies as false or misrepresentative were actually made over a month before Streambend came into existence. "[Burnet employee] Paul [Last Name Unknown]'s verbal misrepresentations were made via telephone in September 13 or September 14, 2004, and in-person at Burnet Realty's offices . . . on September 14, 2004 . . ." (TAC ¶ 38). How can Streambend be said to have acted in reliance on such statements, made approximately 45 days before Streambend existed? Because of this, Count IV (Fraud) should be dismissed as to all defendants.

Similarly, Streambend's Negligent Misrepresentation claims (Counts IX and X) fail. Those claims both turn on Burnet's and the Developers' failure to disclose material facts relating to the Development and the Purchase Agreements. Reliance is an element of negligent misrepresentation. *See Hardin Cty. Sav. Bank v. Hous. & Redevelopment Auth. of City of Brainerd*, 821 N.W.2d 184, 194 (Minn. 2012*); Williams v. Bd. of Regents of Univ. of Minn.*, 763N.W.2d 646, 652 (Minn. 2009) (in negligent misrepresentation claim, trial court would focus on the representation, plaintiff's reliance, and whether plaintiff incurred losses as a result of

reliance). Once again, the State Court Decision renders these claims invalid, since the underlying transactions were void. If there is no actual reliance, there is no claim of negligent misrepresentation. Accordingly, this Court recommends that Counts IV (Fraud) and IX (Negligent Misrepresentation against Developers), and X (Negligent Misrepresentation against Burnet) be dismissed.

### G. Streambend's Unjust Enrichment Claim Should be Dismissed

Streambend's unjust enrichment claim is also grounded in the contract Judge Howard decided was void. "Developers sold units similar to those of Plaintiffs' in 2006 at higher prices than what Streambend III and Streambend IV contracted for in 2004." (TAC ¶ 149). "Streambend III and Streambend IV have lost the benefit of the bargain of more than $75,000.00 (TAC ¶ 152). Here again, to find that an unjust enrichment claim exists, this Court would have to blatantly ignore the Minnesota Courts, and find that a contract existed. To do so would violate the principles of comity and full faith and credit enshrined in our federal system. Accordingly, Count VII should be dismissed.

### H. Uniform Declaratory Judgments Act Claim (Count VIII) Under Minn. Stat. § 555.01 Amendments are allowed.

Finally, Streambend's claim for declaratory judgment should be dismissed. (TAC ¶¶ 155-59). To assert a valid claim under the Minnesota Declaratory Judgment Act, Minn. Stat. § 555.01, a party must have a "viable underlying cause of action." *Essing's Homes Plus, Inc. v. City of St. Paul*, 356 F. Supp. 2d 971, 984 (D. Minn. 2004); *Brown v. Minnesota*, 617 N.W.2d 421, 425 (Minn. Ct. App. 2000). Because all its other claims have failed, Count VIII cannot stand alone. Accordingly, it is invalid and should be dismissed.

## IV.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED that**: Motions to Dismiss filed by Defendants Nedal Abul-Hajj, Sexton I, LLC [Doc. No. 54]; Michael P. Medved, Medved LP [Doc. No. 79]; MRM Management Corp., and James M. Meyers as Managing Trustee for the Michael R. Myers Trust [Doc. No. 120] be **GRANTED in part and DENIED in part as follows:**

1.  To the extent the motions seek dismissal of Count I, Violation of 15 U.S.C. § 1703(a)(2)(B), they should be **GRANTED**;

2.  To the extent the motions seek dismissal of Count II, Violation of 15 U.S.C. § 1703(a)(2)(A) and (C), they should be **GRANTED;**

3.  To the extent the motions seek dismissal of Count III, Violation of Minn. Stat. 515B *et seq.*, they should be **GRANTED;**

4.  To the extent the motions seek dismissal of Count IV, Fraud, they should be **GRANTED;**

5.  To the extent the motions seek dismissal of Count VII, Unjust Enrichment, they should be **GRANTED;**

6.  To the extent the motions seek dismissal of Count IX, Negligent Misrepresentation (Against Developers), they should be **GRANTED;**

7.  To the extent the motions seek any other forms of relief, the motions should be **DENIED**.

In addition, although not specifically requested in the motions above, this Court recommends that for the reasons outlined above, Count V, Wrongful Cancellation (Against

Sexton Lofts, LLC); Count VI, Breach of Contract (against Sexton Lofts, LLC), Count VIII,

Minn. Stat 555.01, should be **DISMISSED.**


Dated: January 28, 2013.

s/*Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 11, 2013,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.