# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Streambend Properties III, LLC and<br>Streambend Properties IV, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>Sexton Lofts, LLC; JJT, LLC; JJT<br>Development, LLC; Heather Enterprises II,<br>LP; Medved, LP; MRM Management<br>Corp.; Regency Commercial Services of<br>Minnesota, LLC; Regency Commercial<br>Services, LC; Sexton I, LLC; Brett A.<br>Thielen; Michael P. Medved; Nedal Abul-<br>Hajj; Burnet Realty, LLC; John Doe; Mary<br>Rowe; and XYZ, Corp.; Robert T. Myers;<br>James M. Myers,<br><br>    Defendants. | Civil File No.: 10-cv-4745 MJD/SER<br><br>**REPORT AND<br>RECOMMENDATION** |

  Sara M. G. Rojas, Esq., The Law Offices of Sara M. G. Rojas, 310 Fourth Avenue South, Suite 5010, Minneapolis, Minnesota 55415, on behalf of Plaintiffs.

  Daniel C. Beck and Jacob B. Sellers, Esqs., Winthrop & Weinstine, PA, 225 South Sixth Street, Suite 3500, Minneapolis, Minnesota 55402, on behalf of Defendants Medved LP and Michael P. Medved.

  D. Charles Macdonald, Esq., Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402, on behalf of Defendants MRM Management Corp., Robert T. Myers, and James M. Myers.

  Brian R. Christianesen, John J. Steffenhagen, and Joseph P. Beckman, Esqs., Hellmuth & Johnson PLLC, 8050 West 78th Street, Edina, Minnesota 55439, on behalf of Defendants Sexton I and Nedal Abul-Hajj.

  Matthew D. Sloneker and Richard A. Lind, Esqs., Lind Jensen Sullivan & Peterson, PA, 901 Marquette Avenue South, Suite 1300, Minneapolis, Minnesota 55402, on behalf of Defendant Realty LLC.

1

STEVEN E. RAU, United States Magistrate Judge

The above captioned case comes before the undersigned on Plaintiffs Streambend Properties III, LLC and Streambend Properties IV, LLC's (collectively, "Streambend") Motion for Entry of Default against Robert Myers ("Default Motion" or "Default Mot.") [Doc. No. 194] and Defendant Robert T. Myers's ("Myers") Motion to Dismiss ("Motion to Dismiss" or "Mot. to Dismiss") [Doc. No. 210]. These matters have been referred to the undersigned for a report and recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1. (Order of Referral dated Feb. 25, 2013, "Feb. Referral") [Doc. No. 202]; (Order of Referral dated Mar. 18, 2013, "Mar. Referral") [Doc. No. 218].

## I. BACKGROUND

### A. Factual Background

The facts and related state court litigation were described in this Court's previous R&R, which Chief Judge Michael J. Davis subsequently adopted.[1] (R&R dated Jan. 28, 2013, "Jan. R&R" or "January R&R") [Doc. No. 196 at 2–8]; (Order dated Feb. 25, 2013, "Feb. Order" or "February Order") [Doc. No. 201]. For this reason, only those facts pertinent to the instant motions are described here.

Plaintiffs Streambend Properties III, LLC and Streambend Properties IV, LLC are limited liability companies located in Eden Prairie, Minnesota. (Third Am. Compl., "TAC") [Doc. No. 176 at ¶¶ 4–5). Jerald Hamman ("Hamman") is the sole owner and Chief Manager of Streambend III and IV. (*Id.* ¶¶ 36–37, 79). Streambed's dispute is with developers who funded a real estate development called Sexton Lofts, LLC ("the Development"), located at the corners of Seventh and Eighth Streets and Portland Avenue South in Minneapolis, Minnesota. (*Id.* ¶ 24).

---

[1] The Court also described the facts in its Memorandum of Law and Order dated January 9, 2012, "Jan. 2012 Order) [Doc. No. 34 at 1–6].

Streambend describes all but one of the Defendants as "Developers"[2] and further divides them depending on whether they became involved in the Development before May 2005 ("Initial Developers") or after ("Additional Developers"). (*Id*. ¶¶ 23, 29–30).

The Third Amended Complaint alleges that Myers is an Iowa resident and an owner of Heather Enterprises II ("Heather II"), another Defendant in this case. (*Id.* ¶ 18). It also alleges that Myers and others own and control Defendant Regency Commercial Services LC ("Regency-Iowa"), an Iowa-based construction company. (*Id.* ¶ 13). The Third Amended Complaint categorizes Myers, Heather II, and Regency-Iowa as Developers, and within that group, they are further described as Additional Developers. (*Id.* ¶¶ 23, 30).

Streambend alleges that in 2004, the Developers, acting through Burnet Realty, LLC ("Burnet"), offered condominiums in the Development for sale. (*Id*. at ¶ 33). Although Burnet was primarily responsible for communicating with prospective condominium buyers, Streambend alleges that Developers also allegedly "provided additional written communications, sent by U.S. Mail . . . intended to reassure Plaintiffs that their purchase decisions were sound[,]" including "an external depiction of the Condominium Tower and adjacent four-story parking ramp . . . ." (*Id*. at ¶¶ 45–46). Streambend further alleges that Developers, again through Burnet, induced Streambend to sign sales documents and pay $18,800 ($9,400 per unit) in earnest money for Units 410 and 510 of the Development. (*Id*. at ¶¶ 47–49).

Streambend alleges that on or about November 4, 2004, it entered into Purchase Agreements for Units 410 and 510, which stated that two parking stalls would be included with each unit. (*Id*. at ¶¶ 47, 50(a)–(b)). Streambend alleges Developers did not construct and did not intend to construct a parking ramp for the Development, despite their promise to do so, that

---

[2] Burnet Realty, LLC ("Burnet") and Michael P. Medved are the only Defendant not listed as a Developers. (TAC at ¶ 23).

3

Developers were unwilling to convey marketable title to Units 410 and 510, and that "Developers never intended to construct the parking ramp prior to the date they sought to force closings on units in the Development, including the dates they attempted to force closings on the Purchase Agreements." (*Id*. at ¶¶ 51, 53–54).

On June 1, 2006, Sexton Lofts, LLC, served Streambend with Notices of Cancellation of Purchase Agreement for Units 410 and 510 ("the Notices"). (*Id*. ¶ 74); (Notice of Cancellation of Purchase Agreement, "Unit 410 Cancellation Notice", Ex. L, Attached to Aff. of Sara M.G. Rojas) [Doc. No. 39].[3] The Notices alleged that Streambend defaulted in failing to close on Units 410 and 510 within thirty days after certificates of occupancy were issued. (TAC ¶ 76). The Notices warned that the Purchase Agreements would be cancelled thirty days after service, unless, before that date, Streambend complied with the Purchase Agreements or secured a court order suspending termination of the Purchase Agreements pending a final decision on the merits. (Unit 410 Cancellation Notice at 2). The Notices further warned that, if Streambend did not comply or secure a court order, it could lose its earnest money, and may lose its right to assert claims or defenses. (*Id.*)

Streambend alleges that, after its title in the units was terminated, another real estate company marketed the units for $552,250 each, including one garage stall each, and a similar unit sold for $567,000 in October 2006. (TAC at ¶¶ 86, 87). Streambend asserts, therefore, that it was deprived of the increase in value to Units 410 and 510, the accompanying parking spaces, and the value of the overall development. (*Id.* ¶ 89–90). It also asserts that it was deprived $18,800 in earnest money. (*Id.* ¶ 91).

---

[3] The record does not appear to contain a similar, separate notice for Unit 510.

These factual allegations provide the basis for the following claims against Myers as part of the Third Amended Complaint's group of Developers: Count I, Violation of 15 U.S.C. § 1703(a)(2)(B) (Interstate Land Sales Full Disclosure Act, "ILSA"); Count II, Violation of 15 U.S.C. § 1703(a)(2)(A) and (C) (ILSA); Count III, Violation of Minnesota Common Interest Ownership Act ("MCOIA"); Count IV, Fraud; Count VII, Unjust Enrichment; Count VIII Minn. Stat. § 555.01 (Declaratory Judgment); and Count IX, Negligent Misrepresentation. (TAC at ¶¶ 95–139, 147–65).

B.   Procedural History

1.   State Court Litigation

The procedural history of this case begins in Hennepin County District Court. Hammann initiated legal action in the Minnesota courts in an attempt to suspend the cancellation of the Purchase Agreements, serving Sexton Lofts, LLC in June 2006. ("State Court Litigation"). *Hammann v. Sexton Lofts, LLC*, Case No. 27-CV-06-12214 (Minn. Dist. Ct.); (Findings of Fact, Conclusions of Law, Order and Mem. of Law, "State Ct. Decision" or "State Court Decision," Ex. O at 3 ¶ 14, Attached to Decl. of Sara M.G. Rojas) [Doc. No. 180].[4] Hammann's state court suit alleged unjust enrichment, breach of contract, fraud, misrepresentation, and violation of the MCOIA, and sought $885,158.00 in damages. (*Id.* at 5). Hennepin County District Court Judge William R. Howard denied Hamman's *pro se* motion for an injunction to prevent Sexton Lofts, LLC from canceling the purchase agreements between Streambend and Sexton Lofts, LLC. (*Id.* at 3 ¶ 15). Neither Streambend entity was a party to the motion, although both are referred to throughout the record of the State Court Litigation. (*Id.*). Several months later, Hamman,

---

[4]   The pages of the State Court Decision are not numbered. This Court considers the first page page 1, the second page page 2, and so on.

represented by counsel, filed an amended complaint. (*Id.* at 3 ¶ 16). In July and August 2007, both parties filed for summary judgment. (*Id.* ¶ 17).

Judge Howard issued his judgment and order on the matter on November 26, 2007, following an August trial.[5] (State Ct. Decision at 1). Judge Howard's Findings of Fact included the following:

> 1. Plaintiff Jerald Alan Hammann (Hammann), a Minnesota resident, is a licensed Certified Public Accountant (Inactive) and is a licensed real estate professional in Minnesota.
>
> 2. Streambend[6] Properties III, LLC (Streambend III) and Streambend Properties IV, LLC (Streambend IV) are both Minnesota limited liability companies. Neither Streambend III nor Streambend IV are parties in this lawsuit. Hammann is the president of both entities. Streambend III and Streambend IV were registered as Minnesota limited liability companies on October 29, 2004.
>
> 3. Defendant Sexton Lofts, LLC (Sexton) is a Minnesota limited liability company. Sexton is a successor in interest to JJT Development, LLC and JJT, LLC, (JJT) both Minnesota limited liability companies . . . .
>
> 4. On October 27[], 2004, JJT signed a New Construction Purchase Agreement with Streambend III for Unit 510 of the development. The signature box of the agreement indicated that Streambend III was the buyer; Jerald A. Hammann signed on behalf of Streambend III . . . .
>
> 5. On October 27[], 2004, JJT signed a New Construction Purchase Agreement with Streambend IV for Unit 410 of the development. The signature box of the agreement indicated that Streambend IV was the buyer; Jerald A. Hammann signed on behalf of Streambend IV . . . .

(*Id*. at 2 ¶¶ 1–5 (citations omitted)).

Judge Howard made the following conclusions of law:

> 1. The sole Plaintiff in this litigation is Jerald Alan Hammann.

---

[5] The State Court Decision refers to the proceedings as a "trial" although the substance of the State Court Decision appears to be a decision on cross-motions for summary judgment. This R&R defers to Judge Howard's phrasing.

[6] Throughout the State Court Decision, Streambend is referred to as "Streambed," an apparent typographical error. In the interest of consistency, this Report and Recommendation employs the correct spelling even when quoting the State Court Decision.

> 2. Neither Streambend Properties III, LLC nor Streambend Properties IV, LLC is a party to this litigation.
>
> 3. The contract between Streambend Properties III, LLC and JJT, LLC is void because Streambend Properties III, LLC did not exist at the time of the contract.
>
> 4. The contract between Streambend Properties IV, LLC and JJT, LLC is void because Streambend Properties IV, LLC did not exist at the time of the contract.

(*Id.* at 4 (Conclusions of Law)).

Judge Howard denied both summary judgment motions with prejudice, but ordered Sexton Lofts, LLC, to pay Hammann $18,800.00 in earnest money. (*Id.* at 4 (Order)). He also ruled that "any and all damage claims are without merit and are dismissed." (*Id.* at 4 (Order ¶ 4)). In his Memorandum of Law, Judge Howard explained his reasoning:

> Since Hammann sought limited liability protection after the [two] purchase agreements were signed, this Court must examine if Streambend III and Streambend IV had the power to contract. The purchase agreements were signed on October 27, 2004[;] Streambend III and Streambend IV did not come into existence until October 29, 2004. As a result, both purchase agreements are void . . . .

(*Id.* at 6). Judge Howard went on to say "[a]ny alternative result would lead to 'a form of future interest to vest in unorganized entities and be inconsistent with our public policy.'" (*Id.* at 7 (citing *Stone v. Jetmar Props., LLC*, 733 N.W.2d 480, 487 (Minn. Ct. App. 2007))). The Hennepin County Court entered judgment on December 27, 2007, and Hammann did not appeal. Register of Actions, *Hamman v. Sexton Lofts, LLC*, Case No. 27-CV-06-12214 (Minn. Dist. Ct.).

### 2. Federal Court Litigation

The January R&R describes the procedural history in this Court, which now includes over 280 docket entries, in more detail. (Jan. R&R at 8–10). Streambend initiated this case in

November 2010. (Compl.) [Doc. No. 1]. The issues specific to the underlying motions arose out of the Court's discovery during the March 2012 oral argument on Streambend's Motion to Amend the Complaint[7] that Streambend had failed to serve fifteen of the eighteen initial defendants, including Myers. (Order dated Mar. 28, 2012, "Service Order") [Doc. No. 53 at 2]. The Court ordered Streambend to serve the Defendants within twenty days. (*Id.* at 3).

On the day the Court required service be completed, Streambend moved the Court to amend the Service Order to request an extension of time to serve Myers by publication and to request the Court to order service on Myers's alleged counsel, Steven P. Wandro ("Wandro"). (Pls.' Mot. to Amend Ct.'s Mar. 28, 2012, Order & to Order Service upon Robert T. Myers's Attorney) [Doc. No. 72]. Streambend alleged that attempts to serve Myers personally had failed, that it began the process for service by publication, and that due to an administrative error, service by publication would not be complete until April 24, 2012, seven days after the Court-ordered service deadline. (Pls.' Mem. Supp. Mot. to Amend Ct.'s Mar. 28, 2012 Order & Order Service upon Robert T. Myers's Attorney) [Doc. No. 73 at 4]. Streambed asked the Court to order service on Wandro because Wandro had previously engaged with Streambend on behalf of Myers regarding Streambend's initial complaint, filed on November 29, 2010. (*Id.* at 2–3, 6–7).

The undersigned denied Streambend's motion, finding that an extension was no longer necessary, and that serving Wandro was not appropriate because Streambend served Myers by publication and because Wandro had not entered an appearance in this case. (Order dated May

---

[7] Although this Motion is listed on the docket as Streambend's Third Motion to Amend the Complaint [Doc. No. 37], it is actually Streambend's second motion to amend the complaint, resulting in Streambend filing its Third Amended Complaint. *See* (Notice of Hr'g of Pls.' Mot. for Leave to Amend Compl.) [Doc. No. 13]; (Order dated June 20, 2011) (granting Streambend's Motion to Amend the Complaint) [Doc. No. 20]; (Second Am. Compl.) [Doc. No. 21]; (Mot. for Leave to Amend Compl.) [Doc. No. 37]; (Order dated Sept. 28, 2012, "Sept. 2012 Order"); (TAC).

4, 2012) [Doc. No. 98 at 2–3].[8] Streambend requested entry of default against Myers on May 29, 2012. (Pls.' Request for Entry of Default against Robert T. Myers, "Default Request") [Doc. No. 117].

With permission of the Court, Streambend filed its Third Amended Complaint in November. (TAC). Streambend then moved for entry of default against Myers in January. (Default Mot.).

In late January, this Court entered an R&R recommending dismissal of several Developers. (Jan. R&R at 25). Chief Judge Davis adopted the R&R, and entered an Order dismissing the moving Developers with prejudice. (Feb. Order). The R&R and Order found that the State Court Litigation precluded Streambend's claims against the moving Developers. (Jan. R&R at 13–24); (Feb. Order at 2–3).

On the same day Chief Judge Davis adopted the January R&R, he referred Streambend's Default Motion to the undersigned. (Feb. Referral). Myers moved this Court to dismiss the TAC against him in March, and Chief Judge Davis referred the motion to the undersigned. (Mot. to Dismiss); (Mar. Referral). Streambend untimely moved this Court for an extension of time to respond to the motion and simultaneously filed its response. (Pls.' Mot. to Extend Time to File Resp. to Robert T. Myers'[s] Mot. to Dismiss) [Doc. No. 222]; (Pls.' Mem. Resp. to Def. Robert Myers['s] Mot. to Dismiss) [Doc. No. 224]. This Court denied Streambend's motion for an extension and struck Streambend's response to Myers's motion as untimely. (Order dated May 1, 2013) [Doc. No. 228]. But the Court permitted Streambend's counsel to make an oral argument supporting its request for entry of default and supporting its opposition to the motion to dismiss during the hearing on those motions. (Am. Mins. dated May 14, 2013) [Doc. No. 240].

---

[8] The pages of this Order are not numbered. This Court considers the first page page 1, the second page page 2, and so on.

### 3. Subsequent State Court Litigation

On March 22, 2013, Hamman moved the Hennepin County District Court to vacate its judgment. Findings of Fact, Conclusions of Law, & Order at 2 ¶ 4, *Hamman v. Sexton Lofts*, Case No. 27-CV-06-12214 (Minn. Dist. Ct. June 4, 2013). Hamman alleged an oral agreement with the developers permitted him to sign the Purchase Agreements on behalf of two separate LLCs that he agreed to set up, and that due to confusion, he was unable to file Articles of Organization for the LLCs until October 29, 2004. *Id.* at 2 ¶ 8. Judge Howard denied Hamman's motion, saying that Hamman had no defense on the merits, and Sexton Lofts, which is no longer an operating business entity, would be prejudiced. *Id.* at 3–4 ¶¶ 5–6. Judge Howard noted that "the reason that [Hamman] has been collaterally estopped in federal court is because a subsequent Sexton entity, Sexton I, LLC, is defending itself on substantially similar claims. To reopen the state court judgment would subject the Sexton defendants to duplicative and unnecessary litigation costs." *Id.* at 4 ¶ 6.

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). In deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint . . . ." *PureChoice, Inc. v. Macke*, No. 07-cv-1290 (DWF/SRN), 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). The State Court Decision and pleadings from the State Court Litigation are matters of public record.

Under the law-of-the-case doctrine, the Court must adhere to decisions in earlier proceedings "to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy." *Murphy v. FedEx Nat'l LTL, Inc.*, 618 F.3d 893, 905 (8th Cir. 2010) (internal citation and quotation omitted). "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Carter*, 490 F.3d 641, 644 (8th Cir. 2007) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The doctrine does not apply to interlocutory orders; instead, it applies to district courts' final decisions that have not been appealed and appellate decisions. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 830 (8th Cir. 2008).

### III. DISCUSSION

#### A. Myers's Motion to Dismiss

Myers's Motion to Dismiss appropriately relies on the law-of-the-case doctrine. (Def. Robert T. Myers's Mem. Supp. Mot. to Dismiss, "Myers's Mem.") [Doc. No. 211 at 7–16]. The January R&R recommended dismissal of several Defendants. (Jan. R&R at 25). This Court permitted Streambend to file its Third Amended Complaint, which removed Michael P. Medved—a moving Defendant addressed in the January R&R—as a Defendant. (Pls.' Mot. for Leave to Amend Compl.) [Doc. No. 37]; (Order dated June 12, 2012) [Doc. No. 127 at 5–6] (permitting Streambend to amend the complaint to the extent it voluntarily dismisses Michael P. Medved); (Sept. 2012 Order).[9] The remaining moving defendants addressed in the January R&R—Nedal Abul-Hajj, Sexton I, LLC, Medved LP, MRM Management Corporation, and James M. Myers as Managing Trustee for the Michael R. Myers Trust—were all categorized as

---

[9] This Order affirmed the undersigned's June 12, 2012 Order [Doc. No. 127] in all respects, except that it allowed Streambend to amend its fraud and negligent misrepresentation claims. (Sept. 2012 Order).

11

Developers by Streambend. (TAC ¶¶ 23, 30).[10] The Third Amended Complaint does not make any factual allegations against Myers that distinguish him from any of the other Developers in this case. *See generally* (TAC).

The January R&R and February Order dismissed the moving Developer Defendants because Streambend's claims were barred by *res judicata* and collateral estoppel. (Jan. R&R at 13–18); (Feb. Order at 2–3). The undersigned recommended dismissal of Counts I and II, violations of the Interstate Land Sales Act ("ILSA"), because the claims were barred by the three-year statute of limitations for ILSA claims. (R&R at 18–20); *see also* (Jan. 2012 Order at 10–12). The undersigned recommended dismissal of Count III, violations of MCOIA, because the State Court Decision found that Streambend's Purchase Agreements were void, and therefore, Streambend was not a purchaser as required for recovery under MCOIA. (R&R at 21); (State Ct. Decision at 6). Similarly, the undersigned recommended dismissal of Courts IV (Fraud), V (Negligent Misrepresentation), and VII (Unjust Enrichment) because Streambend did not exist at the time Hammand signed the Purchase Agreements. (R&R at 22–24). The Purchase Agreements were therefore void and Streambend could not have relied on any false representation nor could it have lost the benefit of a bargain of more than $75,000. (*Id.*). Finally, because a declaratory judgment claim relies on a viable underlying claim—and because this Court found that all of Streambend's claims against the moving Developers failed as a matter of law—the undersigned recommended dismissal of Count VIII (Declaratory Judgment under Minn. Stat. § 555.01). (*Id.* at 24).

---

[10] Pursuant to the parties' stipulation, James M. Myers's name was substituted for John Gamble's name. (Oder dated May 23, 2012) [Doc. No. 111]. Although James M. Myers was not listed as a Developer in the TAC, John Gamble was Managing Trustee for the Michael R. Myers Trust was listed as a Developer. (TAC at ¶ 23). Because James M. Myers was substituted for John Gamble, the Court presumes that James M. Myers as Managing Trustee for the Michael P. Myers Trust is likewise considered a Developer.

Streambend categorizes Myers as a Developer. (TAC ¶ 23). Because this Court previously found that Streambend's claims against Developers should be dismissed because there were barred by *res judicata* and collateral estoppel, the analysis applies with equal force to Myers. Therefore, under the law of the case as established by the January R&R and the February Order, the undersigned recommends that Myers's Motion to Dismiss be granted, and that Myers be dismissed from this case with prejudice.

### B. Plaintiffs' Motion for Default Against Myers

Because the undersigned recommends dismissal of all claims against Myers, the undersigned recommends that Streambend's Default Request and Default Motion be denied as moot.

Even if the undersigned recommended entry of default against Myers—which it does not—it is highly likely that Myers would be successful in having the default set aside. To set aside an entry of default, this Court would weigh "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998) (citation omitted).

As the potentially defaulting party, Myers has a meritorious defense. As described above, this Court has previously dismissed claims against other Developer Defendants in Myers's position with prejudice. (Feb. Order). There is no reason to hold any differently with respect to Myers. Additionally, Streambend could in no way be said to be prejudiced by excusing any potential default against Myers. Streambend has had many chances, both in this Court and in state court, to litigate the same claims against various iterations of groups of Defendants.

The undersigned therefore recommends that Streambend's Default Request and Default Motion be denied as moot.

## IV. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED that**:

1. Plaintiffs' Request for Entry of Default against Robert T. Myers [Doc. No. 117] should be **DENIED as moot**;

2. Plaintiffs' Motion for Entry of Default against Robert Myers [Doc. No. 194] should be **DENIED as moot**;

3. Defendant Robert T. Myers'[s] Motion to Dismiss [Doc. No. 210] should be **GRANTED**; and

4. Robert T. Myers's should be **DISMISSED with prejudice**.

Dated: July 24, 2013.

*s/Steven E. Rau*

STEVEN E. RAU

United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 7, 2013,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.