# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Streambend Properties III, LLC and Streambend Properties IV, LLC, | **Civil File No.: 10-cv-4745 MJD/SER** |
| Plaintiffs, | |
| v. | |
| Sexton Lofts, LLC; JJT, LLC; JJT Development LLC; Heather Enterprises II, LP; Medved, LP; MRM Management Corp.; Regency Commercial Services of Minnesota LLC; Regency Commercial Services LC; Sexton I, LLC; Brett A. Thielen; Michael P. Medved; Nedal Abdul- Hajj; Burnet Realty, LLC; John Doe; Mary Rowe; and XYZ, Corp.; Robert T. Myers; and James M. Myers, as Managing Trustee for the Michael R. Myers Trust, | **REPORT AND RECOMMENDATION AND ORDER** |
| Defendants. | |

Sara M. G. Rojas, Esq., The Law Offices of Sara M. G. Rojas, 310 Fourth Avenue South, Suite 5010, Minneapolis, Minnesota 55415, for Plaintiffs.

Daniel C. Beck and Jacob B. Sellers, Esqs., Winthrop & Weinstine, PA, 225 South Sixth Street, Suite 3500, Minneapolis, Minnesota 55402, for Defendants Medved LP and Michael P. Medved.

D. Charles Macdonald, Esq., Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendants MRM Management Corp., Robert T. Myers, and James M. Myers.

Brian R. Christiansen, John J. Steffenhagen, and Joseph P. Beckman, Esqs., Hellmuth & Johnson PLLC, 8050 West 78th Street, Edina, Minnesota 55439, for Defendants Sexton I, LLC and Nedal Abdul-Hajj.

Matthew D. Sloneker and Richard A. Lind, Esqs., Lind Jensen Sullivan & Peterson, PA, 901 Marquette Avenue South, Suite 1300, Minneapolis, Minnesota 55402, for Defendant Burnet Realty, LLC.

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Plaintiffs Streambend Properties III, LLC and Streambend Properties IV, LLC's (collectively, "Streambend") Motion for Entry of Default Against Brett Thielen [Doc. No. 232], Motion for Entry of Default Judgment [Doc. No. 257], Motion for Leave to Amend Complaint [Doc. No. 261], and Motion for Rule 11 Sanctions [Doc. No. 266], as well as Defendants Sexton I, LLC ("Sexton I") and Nedal Abdul-Hajj's ("Abdul-Hajj") Motion for Rule 11 Sanctions [Doc. No. 245], Defendant Burnet Realty LLC's ("Burnet") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. No. 247], Defendants MRM Management Corporation ("MRM"), James M. Myers, as Trustee for the Michael R. Myers Trust ("James Myers"), and Robert T. Myers's ("Robert Myers") Motion for Sanctions [Doc. No. 250], Medved LP's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11(c) [Doc. No. 251], and Burnet's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11(c) [Doc. No. 252]. These matters have been referred to the undersigned for a report and recommendation ("R&R") and an order pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and District of Minnesota Local Rule 72.1.[1] (Order of Referral Dated May 15, 2013) [Doc. No. 237]; (Order of Reference Dated May 29, 2013, "May Reference") [Doc. No. 243].

I.      BACKGROUND

A.      Factual Background

The facts of this case have been described in detail in this Court's previous R&Rs, all of which the Honorable Michael J. Davis subsequently adopted. (R&R Dated Jan. 28, 2013, "Jan. 2013 R&R" or "January 2013 R&R") [Doc. No. 196 at 2–5]; (Order Dated Feb. 24, 2013, "Feb.

---

[1]      Although the Court now writes this document as both an R&R and an Order, for ease of reference, the Court will refer to this document as an R&R.

2013 Order" or "February 2013 Order") [Doc. No. 201]; (R&R Dated July 24, 2013, "July 2013 R&R") [Doc. No. 283 at 2–5]; (Order Dated Aug. 26, 2013, "Aug. 2013 Order" or "August 2013 Order") [Doc. No. 295]. For this reason, only those facts pertinent to the instant Motions are described here.

In short, this action arises out of Streambend's allegation that it was deprived of the increase in value of two condominium units it pursued the purchase of and the earnest money it paid in pursuit of that purchase. Plaintiffs Streambend Properties III, LLC and Streambend Properties IV, LLC are limited liability companies located in Eden Prairie, Minnesota. (Third Am. Compl., "TAC") [Doc. No. 176 ¶¶ 4–5). Jerald Hammann ("Hammann") is the sole owner and Chief Manager of both Streambend entities. (*Id.* ¶¶ 36–37). Streambend's dispute is with Developers[2] who funded a real estate development ("the Development") called Sexton Lofts, LLC ("Sexton Lofts"). The Development is located at the corners of Seventh and Eighth Streets and Portland Avenue South in Minneapolis, Minnesota. (*Id.* ¶ 24).

The essence of Streambend's claims involves—and despite multiple amended complaints, has always involved—the following allegations. In 2004, the Developers, acting through Burnet, offered condominiums in the Development for sale. (*Id.* ¶ 33). On or about November 4, 2004, Streambend entered into purchase agreements for Units 410 and 510 (collectively, the "Purchase Agreements"). (*Id.* ¶¶ 47–49). The Purchase Agreements stated that two parking stalls would be included with each unit. (*Id.* ¶¶ 50(a)–(b)). The parking structure, however, was never built. (*Id.* ¶¶ 51(a), 81). On June 1, 2006, Sexton Lofts served Streambend with Notices of

---

[2]  Streambend describes all but three of the Defendants—Burnet, Michael P. Medved, and James Myers—as "Developers." (*Id.* ¶¶ 23, 29–30). Presumably, James Myers is a Developer: Streambend lists John Gamble as a Developer. (TAC ¶ 23). But John Gamble's name was replaced with James Myers's name by the Court, following the parties' stipulation. (Order Dated May 23, 2012) [Doc. No. 111].

Cancellation of Purchase Agreements for Units 410 and 510 ("the Notices"). (*Id.* ¶ 74). After Streambend's title in the units was terminated, another real estate company marketed the units for $552,250 each, including one garage stall each, and a similar unit sold for $567,000 in October 2006. (TAC ¶¶ 86–87). Based on those allegations, Streambend asserts that it was deprived of the increase in value to Units 410 and 510, the accompanying parking spaces, the value of the overall development, and $18,800 in earnest money. (*Id.* ¶¶ 89–91).

These factual allegations provide the basis for the following claims: Count I: Violation of 15 U.S.C. § 1703(a)(2)(B) (Interstate Land Sales Full Disclosure Act "ILSA") (against Developers and Burnet); Count II: Violation of 15 U.S.C. § 1703(a)(2)(A) and (C) (ILSA) (against Developers and Burnet);[3] Count III: Violation of Minnesota Common Interest Ownership Act ("MCIOA") (against Developers and Burnet); Count IV: Fraud (against Developers and Burnet); Count V: Wrongful Cancellation (Against Sexton Lofts); Count VI: Breach of Contract (against Sexton Lofts); Count VII: Unjust Enrichment (against Developers); Count VIII: Minnesota Statute section 555.01 ("Declaratory Judgment")[4] (against Developers and Burnet); Count IX: Negligent Misrepresentation (against Developers); and Count X: Negligent Misrepresentation (against Burnet). (TAC ¶¶ 95–179).

---

[3]     The Court refers to Counts I and II collectively as the "ILSA Claims."
[4]     Minnesota Statute section 555.01 is part of Minnesota's Uniform Declaratory Judgments Act. *See* Minn. Stat. Ch. 555. For ease of reference, the Court will refer to Count VIII as "Declaratory Judgment" instead of by the statute, as styled by Streambend. *See* (TAC at 24).

**B.** **Procedural History**

**1.** **State Court Litigation**

The State Court Litigation was described in detail in this Court's July 2013 R&R.[5] (July 2013 R&R at 5–7). Ergo, only a brief summary of the State Court Litigation is included here.

The State Court Litigation began when Hammann, seeking injunctive relief to prevent Sexton Lofts from canceling the Purchase Agreements with Streambend, sued Sexton Lofts in June 2006. (Findings of Fact, Conclusions of Law, Order & Mem. of Law at 3, *Hammann v. Sexton Lofts, LLC*, Case No. 27-CV-06-12214 (Minn. Dist. Ct. Nov. 26, 2007), "State Ct. Decision" or "State Court Decision," Ex. O, Attached to Decl. of Sara M. G. Rojas) [Doc. No. 180-14].[6] Hennepin County District Court Judge William R. Howard denied Hammann's motion for injunctive relief in 2006. (*Id.* at 3). Thereafter, Hammann and Sexton Lofts filed dueling summary judgment motions. (*Id.* at 3). In his summary judgment motion, Hammann claimed unjust enrichment, breach of contract, fraud, and misrepresentation. (*Id.* at 5). Sexton Lofts' summary judgment motion asserted Hammann's lack of standing, that Hammann's claims lacked merit, that the Purchase Agreements provided for remedies, and that Hammann had not suffered damages. (*Id.*). On November 26, 2007, Judge Howard denied both summary judgment motions with prejudice and ordered Sexton Lofts to return Hammann's $18,800 in earnest money. (*Id.* at 4). Judge Howard based his decision on his conclusion that the Purchase Agreements between Streambend and Sexton Lofts were void because Streambend did not exist until two days after

---

[5]     As described more fully below, the "State Court Litigation" refers to *Hammann v. Sexton Lofts, LLC*, Case No. 27-CV-06-12214 (Minn. Dist. Ct.).
[6]     The pages of the State Court Decision are not numbered. *See* (State Ct. Decision). This Court considers the first page page 1, the second page page 2, and so on. Although it was not a party to the litigation, Streambend's name appears throughout the State Court Litigation. (*Id.*).

the contracts were signed. (*Id.* at 4, 7). Hammann did not appeal. Register of Actions, *Hammann v. Sexton Lofts, LLC,* Case No. 27-CV-06-12214 (Minn. Dist. Ct.).[7]

### 2.    Federal Court Litigation

Streambend brought this dispute over the Development to federal court on November 29, 2010. (Compl.) [Doc. No. 1]. Since then, the docket has grown to include 298 entries, most of which are described in detail in previous R&Rs. *See* (Jan. 2013 R&R at 8–10); (July 2013 R&R at 7–9). The underlying motions dealt with in this R&R spring from the scheduling order issued by this Court in May 2013. (Order Dated May 24, 2013, "Scheduling Order") [Doc. No. 242].

Throughout the procedural history of this case, several Defendants and claims have been dismissed. *See* (Mem. of Law & Order Dated Jan. 9, 2012, "Jan. 2012 Order") [Doc. No. 34 at 21] (dismissing Counts I, II, VII, and VIII of Streambend's Second Amended Complaint ("SAC") [Doc. No. 21] against Burnet with prejudice); (Feb. 2013 Order at 4–5) (dismissing all claims against Abdul-Hajj; Sexton I; Medved LP; Michael P. Medved; MRM; and James Myers with prejudice); (Aug. 2013 Order at 2) (dismissing Robert Myers with prejudice). Following a status conference held on May 23, 2013, this Court issued the Scheduling Order "to secure the just, speedy, and inexpensive determination of this action." (Second Am. Minute Entry Dated

---

[7]    Hammann remains active in the State Court Litigation. On March 22, 2013, Hammann moved the Hennepin County District Court to vacate its judgment. Findings of Fact, Conclusions of Law & Order at 2, *Hammann v. Sexton Lofts, LLC,* Case No. 27-CV-06-12214 (Minn. Dist. Ct. June 4, 2013). Hammann alleged that an oral agreement with the developers permitted him to sign the Purchase Agreements on behalf of two separate LLCs that he agreed to set up, and that due to confusion, he was unable to file Articles of Organization for the LLCs until October 29, 2004. *Id.* at 2. Judge Howard denied Hammann's motion, saying that Hammann had no defense on the merits, and Sexton Lofts, which is no longer an operating business entity, would be prejudiced. *Id.* at 3–4. Hammann appealed Judge Howard's June 2013 order. Notice of Appeal, *Hammann v. Sexton Lofts, LLC,* No. A13-1410 (Minn. Ct. App. Aug. 2, 2013). The Minnesota Court of Appeals dismissed Hammann's appeal, and he filed a petition for review. Order, *Hammann v. Sexton Lofts, LLC,* No. A13-1410 (Minn. Ct. App. Sept. 24, 2013); Petition for Further Review, *Hammann v. Sexton Lofts, LLC*, No. A13-1410 (Minn. Oct. 21, 2013).

May 23, 2013) [Doc. No. 241]; (Scheduling Order at 2). This Court set deadlines of June 24, 2013, for all motions to be served, July 15, 2013, for all responses to be filed, and July 29, 2013, for all replies, where permitted, to be filed. (*Id.* at 2–3).[8] Finally, the Scheduling Order set August 15, 2013, at 9:00 a.m., as the time for all motions to be heard before this Court. (*Id.* at 3).

In response to the Scheduling Order, Streambend filed the following motions: Motion for Entry of Default Judgment [Doc. No. 257]; Motion for Leave to Amend Complaint [Doc. No. 261]; and Motion for Rule 11 Sanctions [Doc. No. 266]. In addition to new motions, the Scheduling Order also set August 15, 2013, as the hearing date for Streambend's Motion for Entry of Default Against Brett Thielen [Doc. No. 232].[9] (Scheduling Order at 3).

Defendants responded to the Scheduling Order by filing the following motions: Sexton I and Abdul-Hajj's Motion for Rule 11 Sanctions [Doc. No. 245]; MRM, James Myers, and Robert Myers's Motion for Sanctions [Doc. No. 250]; Medved LP's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11(c) [Doc. No. 251]; Burnet's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11(c) [Doc. No. 252]; and Burnet's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. No. 247].

## II.    DISCUSSION

### A.    Streambend's Motion for Leave to Amend Complaint

The prolix history of Streambend's attempts to amend its Complaint has also been described in previous R&Rs and an Order. (Order Dated June 12, 2012, "June 2012 Order") [Doc. No. 127 at 2–3] (Jan. 2013 R&R at 8–10); (July 2013 R&R at 8–10). Therefore, only a

---

[8]     Streambend was not permitted to file a reply memorandum on its motion to amend. *See* (Scheduling Order at 2).

[9]     Streambend filed an untimely motion for leave to substitute its proposed amended complaint, which this Court struck for its failure to comply with the Scheduling Order. (Pls.' Mot. for Leave to Substitute Proposed Am. Compl.) [Doc. No. 276]; (Order Dated July 16, 2013) [Doc. No. 282]; *see generally* (Scheduling Order).

brief description of that history —focusing on the claims Streambend currently hopes to amend—is contained here.

A month after filing its initial Complaint, Streambend filed an Amended Complaint as a matter of course under Rule 15(a)(1). (Am. Compl.) [Doc. No. 3]. Burnet waived service and moved to dismiss Streambend's Complaint in March 2011. (Burnet's Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)) [Doc. No. 6]. While Chief Judge Davis considered Burnet's motion to dismiss, Streambend filed its first Motion for Leave to Amend Complaint under Federal Rule of Civil Procedure 15(a)(2), which this Court granted on June 20, 2011. (Pls.' Mot. for Leave to Am. Compl.) [Doc. No. 13];[10] (Order Dated June 20, 2011) [Doc. No. 20]. Streambend filed its Second Amended complaint the same day as the Order giving it permission. (SAC). Burnet then withdrew its motion to dismiss and refiled it in response to the Second Amended Complaint. *See* (Letter to District Judge Dated June 23, 2011) [Doc. No. 23]; (Burnet's Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)) [Doc. No. 25].

On January 9, 2012, Chief Judge Davis dismissed Streambend's ILSA Claims (Counts I and II) contained in the Second Amended Complaint with prejudice as to Burnet. (Jan. 2012 Order at 8–14, 21). In dismissing those claims, Chief Judge Davis explained that "Counts One and Two are barred because Streambend knew, or reasonably should have known, of the facts giving rise to an ILSA claim more than three years before this action was commenced on November 29, 2010 (by November 29, 2007)." (*Id.* at 10). In response to that Order,

---

[10]     This document is titled "Notice of Hearing for Plaintiffs' Motion for Leave to Amend Complaint," but describes the Motion. *See* [Doc. No. 13]. Streambend filed a document with the same title that includes the date and time of the hearing on the Motion. *See* [Doc. No. 14]. Thus, for the purposes of this R&R, the Court refers to Document Number 13 as the Motion for Leave to Amend Complaint.

Streambend filed another Motion for Leave to Amend Complaint on February 9, 2012. (Pls.' Mot. for Leave to Amend Compl., "Mot. to File Third Am. Compl.") [Doc. No 37].[11]

Through its Third Amended Complaint, Streambend sought *inter alia* to amend Counts I and II by alleging "additional facts to counter any affirmative defenses" based on the ILSA statute of limitations. (Pls.' Mem. in Supp. of Mot. to Amend Compl., "Mem. in Supp. of Mot. to File Third Am. Compl.") [Doc. No. 38 at 1]. This Court issued an Order granting in part and denying in part Streambend's Motion to File Third Amended Complaint. (June 2012 Order). Specifically, the June 2012 Order denied Streambend's requests to amend Counts I and II. (*Id.* at 7–9, 15). This Court noted that Streambend, through its Third Amended Complaint, "attempt[ed] to put additional facts before the Court to bolster its ILSA [C]laims against Burnet, which were dismissed with prejudice [pursuant to Chief Judge Davis's January 2012 Order]." (*Id.* at 7). Similarly, this Court pointed out that none of the additional facts in the Third Amended Complaint affected Chief Judge Davis's determination that the ILSA statute of limitations bars Streambend's ILSA Claims against Sexton I and Abdul-Hajj.[12] (*Id.* at 8–9).

Streambend objected to the June 2012 Order. (Pls.' Objections to Magistrate Judge's Order Granting in Part and Den. in Part Pls.' Mot. to Amend, "Streambend's Objections to June 2012 Order") [Doc. No. 132]. Chief Judge Davis reversed this Court's Order denying Streambend's request to amend its fraud and negligent misrepresentation claims, but otherwise affirmed the June 2012 Order. (Order Dated Sept. 28, 2012, "Sept. 2012 Order") [Doc. No. 152].

---

[11]     In the interest of clarity, the Court's short cites for Streambend's various Motions for Leave to File Amended Complaint will refer to the ordinal number of the Amended Complaint it seeks to file, rather than the ordinal number of its Motion to Amend.

[12]     Burnet, Sexton I, and Abdul-Hajj were the only Defendants who filed memoranda in opposition to Streambend's Motion to File Third Amended Complaint. *See* (Burnet's Mem. of Law in Opp'n to Pls.' Mot. for Leave to Amend Compl.) [Doc. No. 44]; (Sexton I & Abdul-Hajj's Mem. in Opp'n to Pls.' Mot. to Amend Compl.) [Doc. No. 46].

Streambend also requested permission of Chief Judge Davis to file a motion to reconsider his January 2012 Order (dismissing claims against Burnet), arguing that his decision was "erroneous and overreaching." (Letter to District Judge Dated July 2, 2012, "July 2012 Letter") [Doc. No. 138 at 2].

Streambend referred to the State Court Decision in both its Objections to the June 2012 Order and the July 2012 Letter, providing this Court with its first notice that another court had previously ruled on the dispute. (Streambend's Objections to June 2012 Order at 6); (July 2012 Letter at 2). Chief Judge Davis observed that the discovery of the State Court Decision raised "troubling questions regarding res judicata and the *Rooker–Feldman* doctrine [and did] not support an argument that [Streambend was] not aware of, and reasonably should not have known of, the facts giving rise to their ILSA [C]laims." (Mem. of Law & Order Dated Sept. 28, 2012, "Reconsideration Order") [Doc. No. 153 at 4]. Chief Judge Davis reaffirmed his decision to dismiss Counts I, II, VII, and VIII against Burnet. (*Id.* at 2, 5, 6).

Finally, pursuant to their motions to dismiss, the Court's January 2013 R&R recommended dismissal of all claims against Abdul-Hajj; Sexton I; Michael P. Medved, Medved LP; MRM; and James Myers. (Jan. 2013 R&R at 25). In the January 2013 R&R, which Chief Judge Davis adopted, this Court reiterated the point that the State Court Decision "reveals that Streambend's sole owner and Chief Manager did in fact know that the parking lot would not be built . . . illustrating that the central facts at issue in this case were known nearly four years before Streambend filed the instant action." (*Id.* at 18); *see also* (Feb. 2013 Order) (adopting January 2013 R&R). This Court then recommended dismissal of Robert Myers with prejudice in its July 2013 R&R, which Chief Judge Davis adopted. (July 2013 R&R at 14); (Aug. 2013 Order). Streambend's Motion for Leave to file a Fourth Amended Complaint is now before the

Court.  (Mot. for Leave to Am. Compl., "Mot. to File Fourth Am. Compl." or "Motion to File Fourth Amended Complaint") [Doc. No. 261].

### 1. Legal Standard

A court has discretion to grant leave to amend, and must freely do so "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 907 (8th Cir. 1999).  In interpreting Rule 15, the United States Supreme Court stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded the opportunity to test his claims on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see Becker*, 191 F.3d at 907–08.

Futility, one of the reasons that may prevent an amendment, exists when the claim "would not withstand a [m]otion to [d]ismiss for failure to state a claim upon which relief can be granted."  *DeRoche v. All Am. Bottling Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998) (JRT/RLE) (citations omitted); *see Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 781–84 (8th Cir. 2008) (evaluating "futility" of asserted claims under Fed. R. Civ. P. 12(b)(6) standard).  In applying the motion to dismiss standard in ruling on a motion to amend under a Rule 15(a) futility analysis, courts generally do not weigh the substance of the proposed amended pleadings to the same extent as would be appropriate on a Rule 12(b)(6) motion.  *See Birchwood Labs., Inc. v. Battenfeld Techs., Inc.*, 762 F. Supp. 2d 1152, 1156 (D. Minn. 2011) (MJD/JJK).

Futility determinations utilize the *Twombly* "plausibility" standard under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556

(2007)).  A party moving to amend under Rule 15(a) must support its claim with sufficient specificity to "'raise a right to relief above the speculative level [and] to raise a reasonable expectation that discovery will reveal the evidence of [the claim]'" to satisfy *Twombly*. *Birchwood Labs.*, 762 F. Supp. 2d at 1156 (quoting *Twombly*, 550 U.S. at 555, 556).  A claim that does not satisfy *Twombly* is futile under Rule 15(a).  *Id.*

## 2.  Analysis

Streambend's proposed amendments in its Fourth Amended Complaint fall into six categories: (1) adding parties and allegations based on newly discovered evidence; (2) asserting new ILSA Claims against dismissed parties; (3) adding a punitive damages claim; (4) joining Hammann as an additional plaintiff; (5) modifying party designations and the structure of the complaint; and (6) withdrawing Counts III through X.  (Pls.' Mem. in Supp. of Mot. to Amend "Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl.") [Doc. No. 262 at 1–2, 45]. This section will analyze each of the preceding identified categories of amendments pursuant to Rule 15(a)(2).  *See Becker*, 191 F.3d at 907.

### a.  Adding Parties and Allegations Based on Newly Discovered Evidence

The additional evidence Streambend discovered comes from Hennepin County Property Records; Elliot Park Neighborhood, Inc.'s ("EPNI") Building, Land Use and Housing ("BLUH") Committee records archive; the City of Minneapolis Department of Community Planning and Economic Development ("CPED") records archive; and the July 28, 2004 Option Agreement between JJT Development and Sexton I ("Option Agreement").  (Option Agreement, Ex. A, Attached to the Aff. of John J. Steffenhagen) [Doc. No. 47]; (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 10–11).  In light of this newly discovered evidence,

Streambend seeks to add four new parties to its ILSA Claims contained in Counts I and II. (*Id.* at 11–12, 17).

First, upon review of Hennepin County Property Records and the Option Agreement, Streambend discovered "the existence of and relationship of [Swervo Development Corporation ("Swervo")], [Andrews, Inc.,] and [Robert R. Andrews Jr. ("Robert Andrews")] to the facts of the Complaint." (*Id.* at 11). In turn, Streambend seeks to add Swervo, Andrews, Inc., and Robert Andrews as defendants for its ILSA Claims, Counts I and II in the proposed Fourth Amended Complaint. (*Id.* at 12). As Chief Judge Davis previously explained, "15 U.S.C. § 1711(a)(2) provides that the three-year limitations period starts to run when the plaintiff has actual or constructive knowledge of the alleged violations. It notes that the statute imposes on purchasers a duty to 'exercise . . . reasonable diligence' in discovering ILSA violations." (Jan. 2012 Order at 10) (citations omitted). Streambend admits that it previously knew of the Option Agreement's existence, but not its terms. (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 11). As such, Streambend had actual knowledge of the Option Agreement. Further, Streambend had constructive knowledge of the recorded deed—discovered in the Hennepin County Property Records—from Andrews, Inc. to Sexton I, which gave rise to Streambend's discovery that "Andrews[, Inc.] and/or Robert Andrews . . . was financially involved" in the Development as early as September 24, 2004.[13] (*Id.* at 12); *see also* (Redline Draft of Fourth Am. Compl., "FAC," Ex. B, Attached to Decl. of Sara M. G. Rojas) [Doc. No. 263-59 ¶ 39] ("This deed [from Andrews, Inc. to Sexton I] was recorded in Hennepin County on September 24, 2004.").

---

[13]     *See* Minn. Stat. § 507.32 ("The record, as herein provided, of any instrument properly recorded shall be taken and deemed notice to parties."); *Anderson v. Graham Inv. Co.*, 263 N.W.2d 382, 384 (Minn. 1978) ("Constructive notice is a creature of statute and, as a matter of law, imputes notice to all purchasers of any properly recorded instrument even though the purchaser has no actual notice of the record.").

Streambend's actual knowledge of the Option Agreement and constructive knowledge of the deed precedes the 2006 cancellation of the Purchase Agreements. Therefore, Streambend would have discovered this new evidence had it exercised reasonable diligence in 2006. Any allegations against Swervo, Andrews, Inc., and Robert Andrews in Counts I and II would be subject to dismissal on the same grounds as the previously dismissed ILSA Claims. As such, this portion of the amendment is denied as futile.

Second, after reviewing the BLUH and CPED records archives, Streambend discovered new information that it argues will allow it to bring ILSA Claims against an additional party, Tanek, Inc. ("Tanek"). (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 17). Streambend's attempt to add Tanek as a defendant fails for the reasons discussed above. Had Streambend exercised reasonable diligence and reviewed the BLUH and CPED records archives in 2006, it would have discovered that Tanek involved itself in the Development as early as September 16, 2004. (FAC ¶ 60). As such, Streambend's allegations against Tanek in Counts I and II of the FAC would be subject to dismissal on statute of limitations grounds. Therefore, this portion of the amendment is also denied as futile.

An ILSA action must be filed within "three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 1711(a)(2). Streambend's proposed amendments to the ILSA Claims pursuant to "newly discovered evidence" also adds nothing that overcomes Chief Judge Davis's previous holding that "Streambend knew, or reasonably should have known, of the facts giving rise to an ILSA claim more than three years before this action was commenced on November 29, 2010 . . . ." (Jan. 2012 Order at 10). As with its previously dismissed claims, Streambend would have discovered this new evidence, and the alleged ILSA allegations that spring from it, had it

exercised reasonable diligence when Sexton Lofts terminated the Purchase Agreements in June 2006. *See, e.g.*, (Jan. 2012 Order at 12). Therefore, Streambend's proposed amendments to add new parties and allegations is denied as futile because it is susceptible to the statute of limitations, just as the previous ILSA Claims have proven to be. Streambend's disagreement with the Court's prior Orders does not permit it to make unlimited amendments to its Complaint. *See* (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 17–25) (arguing that the ILSA Claims do not fall outside of the relevant statute of limitations).

### b. Amendments to ILSA Claims (Counts I and II) Against Dismissed Parties

As discussed above, Streambend's ILSA Claims against Burnet, Abdul-Hajj, Sexton I, Michael P. Medved, Medved LP, MRM, James Myers, and Robert Myers have all been previously dismissed with prejudice. (Jan. 2012 Order at 21); (Feb. 2013 Order at 4–5); (Aug. 2013 Order at 2). Those claims were dismissed on the grounds that ILSA's three-year statute of limitations barred those claims. (*Id.*). Streambend argues its "motion to amend [to rejoin previously dismissed parties] is based [(1)] on newly discovered evidence as well as [(2)] on claims Plaintiffs in good faith (even if erroneously) believed were already part of their allegations." (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 27). Neither ground overcomes Chief Judge Davis's previous Orders dismissing these claims with prejudice. *See* (June 2012 Order); (Reconsideration Order); (Feb. 2013 Order); (Aug. 2013 Order).

First, Streambend's ILSA Claims remain time-barred. As this Court has held consistently, ILSA's three-year statute of limitations began accruing at least as early as 2006, when Streambend's receipt of the Notices of Cancellation triggered its duty to exercise reasonable diligence. *See* (Jan. 2013 R&R at 19). Streambend now argues that it should be allowed to resurrect those dismissed claims on the basis of newly discovered evidence it

uncovered six years later on August 8, 2012. (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 18) (citing FAC ¶ 191). As Defendants correctly point out, however, all of the new factual allegations in Counts I and II of the proposed Fourth Amended Complaint occurred before the cancellation of the Purchase Agreements. (Defs.' Joint Mem. of Law in Opp'n to Pls.' Mot. to Amend Compl.) [Doc. No. 269 at 9] (citing FAC ¶¶ 96–97, 103–104, 106, 110–11, 113, 125–27, 130, 136–38, 209, 211, 226, 228). Additionally, Streambend's argument as to why it should not have been expected to discover this additional evidence until August 8, 2012 is specious. Streambend claims that,

> [b]ecause the State Court [Litigation] centered on the rights and obligations of Hammann and Sexton Lofts to each other on or around June 1, 2006, and further because no other parties were part of the State Court [Litigation], there was never a prior reason relating to that case to make the inquiries begun on August 8, 2012 . . . .

(FAC ¶ 193). As this Court explained earlier, "the very language of Hammann's State Court filings plainly shows Hammann was aware that there were problems with the parking structure plans." (Jan. 2013 R&R at 19).[14] Thus, Counts I and II remain susceptible to the statute of

---

[14] The State Court Litigation over the problems with the parking structure plans directly disputes Streambend's equitable estoppel argument. *See* (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 21). Streambend argues that Defendants repeatedly claimed that the parking structure would be built; therefore, equitable estoppel bars them from arguing that Streambend should not have believed them and should have investigated its claims sooner. (*Id.*). Even if this argument were meritorious, Defendants do not have to argue that Streambend should not have believed them. Hammann's filings in the State Court Litigation, which discuss the lack of a parking structure, show that Hammann, Streambend's president, believed that Defendants did not deliver parking spaces upon closing, and did not intend to do so. *See, e.g.*, (Pl.'s Mem. in Supp. of Mot. to Amend Compl. & Mot. for Summary J. at 5, *Hammann v. Sexton Lofts, LLC*, Case No. 27-CV-06-1224 (Minn. Dist. Ct. Sept. 1, 2006), Ex. 2, Attached to Aff. of Trista M. Roy) [Doc. No. 136-2].

Additionally, Streambend argues that "[a]ny [ILSA] statute of limitations should be equitably tolled from November 2, 2009[,] to the date of filing of the complaint, in light of the sanctions filing in *Streambend v. Carlyle* . . . and because of the uncertainty with how the federal courts would address the relationship between the state statutory cancellation statutes and [ILSA]." (FAC ¶ 196). "'Equitable tolling is appropriate when the plaintiff, despite all due

limitations bar, even with the new allegations, because Streambend had actual notice of the alleged violations as early as 2006.

Second, contrary to Streambend's contention, these new claims are the same claims that Chief Judge Davis dismissed when they were part of the Second Amended Complaint. *See generally* (Jan. 2012 Order). In response to a different motion, Streambend argues that Chief Judge Davis dismissed its ILSA Claims against Burnet based on his incorrect belief that Streambend was only alleging in its Second Amended Complaint that Burnet failed to perform at closing. (Pls.' Mem. in Resp. to Defs.' Mot. for Sanctions) [Doc. No. 275 at 12]. Apparently in response, Streambend used the phrase "never (ever)" in several factual allegations in the proposed Fourth Amended Complaint. *See, e.g.*, (FAC ¶¶ 103–04). Notwithstanding these "nevers" and "evers," "Counts One and Two are barred because Streambend knew, or reasonably should have known, of the facts giving rise to an ILSA claim more than three years before this action was commenced on November 29, 2010 (by November 29, 2007)." (Jan. 2012 Order at 10). A point Chief Judge Davis previously, and apparently unsuccessfully, attempted to impress on Streambend bears repeating here: Streambend "had multiple opportunities to assert [its] entirely new and contradictory theory in [its] three [previous] complaints or in [its] opposition to [Burnet's] motion to dismiss. [It] failed to do so, and, at some point, amendment of the complaint must cease." (Reconsideration Order at 3–4). To be clear, **that point is now**. Streambend's Motion to File the Fourth Amended Complaint is denied as futile to the extent the proposed amendments reintroduce Counts I and II against previously dismissed parties.

---

diligence, is unable to obtain vital information bearing on the existence of his claim.'" *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995) (quoting *Chakonas v. City of Chicago*, 42 F.3d 1132, 1135 (7th Cir. 1994)). Neither the threat of sanctions in another case, nor Streambend's uncertainty about the law rendered Streambend unable to investigate its claim. Both of Streambend's equitable arguments are without merit.

### c.    **Punitive Damages Claim**[15]

Streambend seeks to add a claim for punitive damages pursuant to Minnesota Statutes section 549.20.  (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 45–48); (FAC ¶¶ 229–31).  Minnesota Statutes sections 549.191 and 549.20 govern the pleading of punitive damages claims based on Minnesota law.  *Zeelan Indus., Inc. v. de Zeeuw*, 706 F. Supp. 702, 705 (D. Minn. 1989) (HHM).  But "with respect to claims arising under federal law, the Court considers a motion to add punitive damages under the federal rules and not pursuant to the framework for adding a claim of punitive damages under Minn. Stat. §§ 549.191 and 549.20." *Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, Civ. No. 09-1091 (JNE/JSM), 2010 WL 4193076, at *6 (D. Minn. Oct. 7, 2010) (citing *Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir. 1994); *Morlock v. W. Cent. Educ. Dist.*, 46 F. Supp. 2d 892, 923 (D. Minn. 1999) (JRT)).  Punitive damages rely on the existence of an underlying cause of action.  *Wiehoff v. GTE Directories Corp.*, 61 F.3d 588, 594 (8th Cir. 1995).[16]  In light of that understanding, and the fact that the only companion claims that Streambend raises in its proposed Fourth Amended Complaint are the two ILSA Claims, this Court must evaluate Streambend's

---

[15]    Streambend styles this as a "refreshed" punitive damages claim.  *See, e.g.*, (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 1–2).  While Streambend did not expressly refer to punitive damages or cite to Minnesota Statutes section 549.20 in its Third Amended Complaint, it did recite the elements of a punitive damages claim in Count X (Negligent Misrepresentation against Burnet).  (TAC ¶¶ 178–79).  Additionally, Streambend included an argument in support of an amendment to add a claim for punitive damages in its memorandum in support of its Motion to File Third Amended Complaint.  (Mem. in Supp. of Mot. to File Third Am. Compl. at 5–8).  For the sake of clarity, the Court refers to Streambend's present punitive damages claim as "added" rather than "refreshed."

[16]    Some case law suggests that a punitive damages claim under Minnesota state statutes require "the existence of a state tort law claim."  *See, e.g.*, *Schedin v. Ortho-McNeil-Janssen Pharms., Inc.* 776 F. Supp. 2d 907, 915 (D. Minn. 2011) (JRT).  Streambend does not make any state tort claims in its proposed Fourth Amended Complaint, and, as discussed elsewhere, proposes to withdraw its other, non-ILSA claims.  *See* (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 45).

punitive damages claim as one arising out of federal law. As such, Rule 15's futility standard governs the addition of Streambend's claim of punitive damages under section 549.20. Fed. R. Civ. P. 15; *Aviva Sports, Inc.*, 2010 WL 4193076, at *6. As discussed above, Streambend must support its claim for punitive damages—as well as the underlying claim that it springs from—with sufficient specificity to "'raise a right to relief above the speculative level.'" *Birchwood Labs.*, 762 F. Supp. 2d at 1156 (quoting *Twombly*, 550 U.S. at 555).

In light of the discussion of Streambend's ILSA Claims contained above, Streambend's proposed addition of a claim for punitive damages is futile. In addition to a showing that it is entitled to actual or compensatory relief, a party seeking punitive damages must show "upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights and safety of others." § 549.20, subdiv. 1(a). Such "deliberate disregard" occurs where:

> [T]he defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
>
> (2) deliberately proceeds to act with indifference to the high degree of probability of injury to the rights or safety of others.

§ 549.20, subdiv. 1(b). Streambend has not even cleared the hurdle of showing that it is entitled to actual or compensatory relief under ILSA, let alone the high bar of showing that the acts entitling it to said relief were committed with deliberate disregard for the rights and safety of others. Because the statute of limitations bars the claims from which the punitive damages claim springs, Streambend's Motion to File Fourth Amended Compliant is denied as futile to the extent it seeks to add a claim for punitive damages.

### d.    Joining Hammann as an Additional Plaintiff

Streambend seeks to amend the Complaint to join Hammann as a plaintiff to Counts I and II and its punitive damages claim.  (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 45). When considering a motion to amend a complaint to add a plaintiff, a court must still follow the guidance of Rule 15(a).  *Trs. of Graphic Commc'ns Int'l Union Local 229 Health & Welfare Fund v. Rapid Copy, Inc.*, 620 F. Supp. 202, 206 (D. Minn. 1985) (DEM); *see also Coke v. Loadmaster Corp.*, 420 F. App'x 647, 648 (8th Cir. 2011) *per curium* (affirming district court order granting motion to amend complaint to add parties when district court considered the motion to amend under Rule 15(a)(2) and Rule 20).  As such, this amendment must satisfy the above-discussed standards for amendment pursuant to Rule 15(a).

First, this amendment is futile because Streambend's argument has no basis in the proposed Fourth Amended Complaint.  Streambend makes an argument for Hammann's joinder under Federal Rules of Civil Procedure 17 and 20 to the non-ILSA Claims, which Streambend acknowledges have been dismissed as to Streambend.  (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. Compl. at 41, 43–44).  And Streambend seeks, through its proposed Fourth Amended Complaint, to withdraw Counts III through X, the Counts upon which it bases its argument for joinder.  *See* (*id.* at 45) ("As to Counts III [through] X and what would be proposed Count XI (Negligent Misrepresentation Against Tanek), [Streambend] presently proposes to withdraw these Counts (or to not raise the claim) to the extent any party has not yet been dismissed from these counts.");[17] (FAC ¶¶ 197–231) (listing only three claims: Counts I and II (the ILSA Claims) and the punitive damages claim, and showing Counts III through X in strikeout text).  Thus, Streambend's argument for joinder of Hammann relies on claims

---

[17]    The proposed Fourth Amended Complaint does not contain "Count XI (Negligent Misrepresentation Against Tanek)").  *See generally* (FAC).

Streambend appears to have abandoned in the proposed Fourth Amended Complaint and has nothing to do with the claims Streambend raises in the proposed Fourth Amended Complaint.[18] Therefore, Streambend's argument in support of its proposed amendment to join Hammann shares no relationship with the proposed Fourth Amended Complaint.

Even if Streambend were to provide an argument in support of joining Hammann that were relevant to the claims in the proposed Fourth Amended Complaint, joinder of Hammann would still be futile. As the ILSA and punitive damages discussions above show, the claims to which Streambend hopes to join Hammann have no merit. The ILSA Claims are time-barred; and the punitive damages claim relies on the merit of the ILSA Claims. Joining Hammann to the Complaint will not save Streambend's claims from the ILSA statute of limitations, and Streambend fails to argue otherwise.

Because Streambend's justification for joining Hammann has no basis in the Proposed Fourth Amended Complaint, and because the claims to which Streambend hopes to join Hammann have no merit, and Hammann's joinder would not change that fact, Streambend's Motion to File Fourth Amended Complaint is denied as futile to the extent it seeks to add Hammann as a plaintiff.

---

[18]    Perhaps more troubling is Streambend's statement that "[a]s to Counts III [through] X and what would be proposed Count XI (Negligent Misrepresentation Against Tanek), Plaintiffs presently propose to withdraw these Counts . . . ." (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 45). One potential inference this Court could make in the face of that statement's use of the word "presently," combined with an argument for joining Hammann that is only relevant to those withdrawn claims, is that Streambend plans to reintroduce the non-ILSA claims at some later date, once it succeeds in adding Hammann to the complaint. Thus, perhaps Streambend seeks to join Hammann in an effort to set itself up to continue its attempts to amend its complaint at least once more after this current attempt. This Court is denying Streambend's Motion to File Fourth Amended Complaint and recommending dismissal of all remaining Defendants—no further amendments should be contemplated.

###### e. Modifying Party Designations and the Structure of the Complaint

Streambend also seeks to amend its Complaint to modify party designations and to change the way the Complaint is organized. (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 1). Under the Federal Rules, a court may allow amendments to pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). Streambend's primary justifications for its cosmetic amendments are that, with the addition of new parties and allegations, the Complaint has grown considerably and the parties are difficult to track. *See* (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 4–9). Therefore, Streambend hopes to reorganize the Complaint in the interest of clarity. (*Id.*) The Court's above denial of the bulk of Streambend's amendments eliminates that concern. Because this Court has now denied the substantive amendments Streambend seeks, no just requirement to grant Streambend's cosmetic amendments exists. As such, the Motion to File Fourth Amended Complaint is denied to the extent it seeks to modify party designations and the structure of the Complaint.

###### f. Withdrawing Counts III Through X

Streambend seeks to amend its Complaint to withdraw Counts III through X. (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 45) ("As to Counts III [through] X and what would be proposed Count XI (Negligent Misrepresentation Against Tanek), [Streambend] presently proposes to withdraw these Counts (or to not raise the claim) to the extent any party has not yet been dismissed from these counts."); (FAC ¶¶ 197–231) (listing only three claims: Counts I and II (the ILSA Claims) and the punitive damages claim, and showing Counts III through X in strikeout text). These claims have already been dismissed against several Defendants. *See* (Feb. 3013 Order at 3–4) (dismissing Abdul-Hajj; Sexton I; Michael P. Medved; Medved, LP; MRM; and James Meyers with prejudice); (Aug. 2013 Order

at 2) (dismissing Robert Myers with prejudice). Through this R&R, the Court recommends that these claims against the remaining Defendants also be dismissed. *See infra* at 26–30 (recommending dismissal of Burnet), 31–33 (recommending dismissal of Thielen), and 37–40 (recommending dismissal of Sexton Lofts; JJT, LLC; JJT Development, LLC; Heather Enterprises II, LP; Regency Commercial Services of Minnesota, LLC; Regency Commercial Services, LC; John Doe; Mary Rowe, and XYZ Corp.). The Court has now denied Streambend's Motion to File Fourth Amended Complaint on substantive grounds; there remains no reason to file the proposed Fourth Amended Complaint. Thus, because these claims have been previously dismissed with prejudice on their merits as to some Defendants, and because the Court here recommends dismissal of these claims with prejudice based on their merits as to the remaining Defendants, the Court denies Streambend's Motion to File Fourth Amended Complaint to the extent it seeks to withdraw Counts III through X as moot.

### B. Burnet's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

In January 2012, the Court dismissed the following claims against Burnet based on the Second Amended Complaint: Count I: Violation of 15 U.S.C. § 1703(a)(2)(B); Count II: Violation of 15 U.S.C. § 1703(a)(2)(A) and (C); Count IV: Fraud; Count VII: Unjust Enrichment; Count VIII: Minnesota Statute section 559.217, subdivision 2; and Count IX: Negligent Misrepresentation. (SAC ¶¶ 66–85, 94–104, 112–26); (Jan. 2012 Order at 21–22). Chief Judge Davis dismissed Counts I, II, VII, and VIII with prejudice, but permitted Streambend thirty days to amend its fraud and negligent misrepresentation claims to plead those claims with particularity. (Jan. 2012 Order at 21–22). Although the parties disputed whether Streambend ultimately satisfied the particularity standard, Chief Judge Davis permitted Streambend to file its fraud and negligent misrepresentation claims in the Third Amended Complaint. (Sept. 2012

Order at 2–3). The Third Amended Complaint therefore included claims against Burnet for Count I: Violation of 15 U.S.C. § 1703(a)(2)(B); Count II: Violation of 15 U.S.C. § 1703(a)(2)(A) and (C); Count III: Violation of MCIOA; Count IV: Fraud; Count VII: Unjust Enrichment; Count VIII: Declaratory Judgment; and Count X: Negligent Misrepresentation (TAC ¶¶ 95–139, 147–59, 166–79).[19]

Several Defendants—Abdul-Hajj, Sexton I, Michael P. Medved, Medved LP, MRM, and James Myers (collectively, the "Moving Defendants")—moved to dismiss the Third Amended Complaint, and this Court recommended dismissal of all claims against the Moving Defendants. (Jan. 2013 R&R at 25). The Court *sua sponte* recommended dismissal of Count V: Wrongful Cancellation (against Sexton Lofts); Count VI: Breach of Contract (against Sexton Lofts), and Count VIII: Declaratory Judgment. (*Id.* at 25–26). Because Burnet was an integral part of the claims alleged against the Moving Defendants in the Third Amended Complaint, the Court addressed claims against Burnet and the Moving Defendants together in its discussion. *See generally* (*id.*). But Burnet had not filed a motion to dismiss at the time of the January 2013 R&R, and therefore, the text of the Court's recommendation section did not specifically recommend dismissal of any claims against Burnet. *See* (*id.* at 25–26). Chief Judge Davis adopted the Court's R&R and clarified that all claims against the Moving Defendants were dismissed with prejudice. (Feb. 2013 Order at 4–5).

Burnet now moves for dismissal pursuant to the Court's Scheduling Order. (Scheduling Order at 3); (Burnet's Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), "Burnet's Mot. to Dismiss" or the "Motion to Dismiss") [Doc. No. 247]. Burnet argues that the reasoning applied

---

[19] The unjust enrichment claim states that it is "Against Developers," and not, as specified in other claims, against Burnet. *Compare, e.g.*, (TAC at 23) *with* (TAC at 24). But the text of the unjust enrichment claim states that it is made against Burnet. (TAC ¶ 148).

to the Moving Defendants' motions to dismiss likewise applies to Burnet, and the claims against Burnet should also be dismissed with prejudice. *See generally* (Burnet's Mem. of Law in Supp. of Mot. to Dismiss, "Burnet's Mem. in Supp. of MTD") [Doc. No. 249]. For the reasons stated below, the Court formalizes its recommendation that all claims against Burnet be dismissed with prejudice.

### 1. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint contains "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678 (internal quotations omitted)). A court accepts the facts alleged in the complaint as true, and grants "reasonable inferences in favor of the nonmoving party." *Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 405 (8th Cir. 2012). Legal conclusions "must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Claims of fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b). Required details include the "time, place[,] and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby . . . ." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997) (internal citations and quotations omitted).

### 2. Analysis

#### a. Timeliness of Burnet's Motion to Dismiss

Streambend argues that Burnet's Motion to Dismiss is untimely. (Streambend's Mem. in Resp. to Burnet's Mot. to Dismiss, "Streambend's Opp'n to Burnet's MTD") [Doc. No. 281 at

13]. Streambend argues it served Burnet with the Third Amended Complaint on November 2, 2012, and under the Federal Rules, Burnet had fourteen days to respond. (*Id.* (citing Fed. R. Civ. P. 15(a)(3)). Burnet filed its Motion to Dismiss on June 24, 2013, in accordance with this Court's Scheduling Order. (Scheduling Order at 3); (Burnet's Mot. to Dismiss). Burnet did not respond to the untimeliness argument in its reply. *See generally* (Burnet's Reply Mem. in Supp. of Mot. to Dismiss) [Doc. No. 284].

Streambend does not ask for any relief from the Court as a result of Burnet's untimely response, and has not moved for entry of default against Burnet. *See* Fed. R. Civ. P. 55 ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1101 (D. Minn. 2010) (PJS/FLN) ("It appears that, unless a non-answering defendant has been found in default under Rule 55(a), the defendant may file a motion to dismiss under Rule 12(b), even though its time to file an answer has expired." (citation omitted)). Additionally, Streambend does not argue that it suffered prejudice as a result of Burnet's untimely response. *See* (Streambend's Mem. in Opp'n to Burnet's MTD at 13). Therefore, the Court accepts Burnet's Motion to Dismiss and considers it on its merits.

### b.    Previously Dismissed Claims

The ILSA Claims (Counts I and II) and the unjust enrichment claim (Count VII) made against Burnet in the Third Amended Complaint were dismissed with prejudice when they were pleaded against Burnet in the Second Amended Complaint. (Jan. 2012 Order at 14, 18, 21). Streambend argues it seeks to make new ILSA Claims under its proposed Fourth Amended Complaint. (Streambend's Opp'n to Burnet's MTD at 21–22). But because this Court denies

Streambend's Motion to File Fourth Amended Complaint with respect to the ILSA Claims, the Court need not reach this argument in the context of Burnet's Motion to Dismiss. Streambend also argues the ILSA Claims should be allowed to go forward because the Court is permitted to revise its orders prior to judgment. (*Id.* at 22 (citing Fed. R. Civ. P. 54(b)). In making this argument, Streambend attempts to relitigate Chief Judge Davis's dismissal of the ILSA Claims as pleaded in the Second Amended Complaint. (*Id.* at 22–24). Once already Streambend's request for reconsideration was denied—nothing has changed. *See* (Reconsideration Order). Reconsideration of an Order, especially reconsideration that was already denied, is not an appropriate response to a motion to dismiss.

The ILSA Claims and the claim for unjust enrichment are improperly pleaded in the Third Amended Complaint because they were previously dismissed with prejudice.[20] (Jan. 2012 Order at 21). They remain dismissed. (Jan. 2013 R&R at 11–12).

### c. Counts III, IV, and X

In its January 2013 R&R, the Court discussed Count III: Violation of MCIOA; Count IV: Fraud; and Count X: Negligent Misrepresentation (against Burnet) and recommended that each of these claims be dismissed against Burnet. (Jan. 2013 R&R at 20–22 (discussing Burnet in the context of the MCIOA claim recommending dismissing the MCIOA claim against "all defendants"), 22–24 (recommending dismissal of Counts IV (Fraud against Developers and

---

[20]     Streambend does not make any argument in support of reasserting the unjust enrichment claim against Burnet, which this Court previously dismissed. *See* (Jan. 2013 R&R at 24).

Streambend's unjust enrichment claim is based on the later sale of units in the Development, which sold for higher prices in 2006 than the prices for the units Streambend contracted for in 2004. (TAC ¶ 149). But the State Court Decision found the Purchase Agreements—i.e., the contracts referred to in the unjust enrichment claim—were void. *See* (State Ct. Decision at 4, 7). Therefore, Streambend's claim that it is entitled to any appreciation in value (an alleged benefit of its Purchase Agreements) fails because the Purchase Agreements are void. *See* (Jan. 2013 R&R at 24).

Burnet), IX (Negligent Misrepresentation against Developers), and X (Negligent Misrepresentation against Burnet)). In the interest of judicial economy and to avoid needless repetition, the Court incorporates by reference its analysis in the January 2013 R&R because its analysis includes Burnet and applies with equal force to Burnet. *See* (*id.*).

Streambend argues this Court erred in its analysis in the January 2013 R&R in finding that Streambend's MCIOA claim does not state a claim for relief because the MCIOA does not limit claimants to purchasers, and because the January 2013 R&R and the February 2013 Order "failed to evaluate [Streambend's] claims in light of the broader coverage of MCIOA's Standing Clause." (Streambend's Resp. to Burnet's MTD at 15). Streambend already challenged this Court's January 2013 R&R. *See* (Pls.' Objections to Magistrate Judge's Jan. 28, 2013 R&R, "Streambend's Objections to January 2013 R&R") [Doc. No. 198]. It may not relitigate the same issues again at this stage. To the extent Streambend seeks reconsideration of the February 2013 Order (which adopted the January 2013 R&R), the procedures are set out in the District of Minnesota's Local Rule 7.1(j); responding to a motion to dismiss is not the appropriate method.

The January 2013 R&R recommended dismissal of the fraud and negligent misrepresentation claims because Streambend did not exist at the time of the relevant Purchase Agreements, the Purchase Agreements were void under the State Court Decision, and therefore Streambend could not have relied on an agreement to which it is not a party. (Jan. 2013 R&R at 23–24). Streambend argues that the "fraud-related claims" (which presumably include both Count IV: Fraud and Count X: Negligent Misrepresentation) should not be dismissed because "it is impossible to argue that no person relied on the representations made by Burnet [] through the documents identified by the [proposed Fourth Amended Complaint] and [Third Amended Complaint] . . . ." (Streambend's Resp. to Burnet's MTD at 18 (citations omitted)).

Additionally, Streambend relies on its proposed Fourth Amended Complaint, which seeks leave to add Streambend's owner, Hammann, as a plaintiff to make these claims. (*Id.* at 18–19). Because the Court denies Streambend's Motion to File Fourth Amended Complaint with respect to adding Hammann as a plaintiff, the Court need not discuss the issue again here.

Finally, Streambend now moves to amend its Complaint to withdraw Counts III through X. (Streambend's Mem. in Supp. of Mot. to File Fourth Am. Compl. at 45). This appears to be at least an implicit recognition that that these claims will not be successful.

The Court recommends that Counts III, IV, and X be dismissed with prejudice against Burnet.[21]

### d. Declaratory Judgment

The Court's January 2013 R&R also recommended that Streambend's declaratory judgment claim (Count VIII) be dismissed because the remaining claims failed. (Jan. 2013 R&R at 24). As it argued in response to the January 2013 R&R, Streambend argues this Court's January 2013 R&R was wrong in recommending dismissal of the declaratory judgment claim because the statute permits an independent declaratory judgment claim. (Streambend's Opp'n to Burnet's MTD at 20–21); *see also* (Streambend's Objections to Jan. 2013 R&R at 16). The Court stands by its reasoning in the January 2013 R&R. (Jan. 2013 R&R at 24). All claims against Burnet have also failed, and the Court recommends that Count VIII be dismissed as to Burnet as well. *See Essling's Homes Plus, Inc. v. City of St. Paul*, 356 F. Supp. 2d 971, 984 (D.

---

[21]     Streambend also argues that, contrary to Burnet's argument, the MCIOA, fraud, negligent misrepresentation, and declaratory judgment claims should not be dismissed based on law of the case. (Streambend's Opp'n to Burnet's MTD at 20–21); *see also* (Burnet's Mem. in Supp. of MTD at 10–11 (arguing law of the case applies)). Because there are sufficient arguments grounded in the merits of these claims, as opposed to resorting to this case's tortured procedural history, the Court does not reach this argument.

Minn. 2004) (MJD/JGL) (to assert a valid declaratory judgment claim, the complaint must have a viable underlying cause of action).

### e. Prejudice

Because Streambend has already received multiple opportunities to amend its complaint and has not been able to cure the deficiencies, the Court recommends that all claims against Burnet be dismissed with prejudice.

### C. Streambend's Motion for Default Against Brett Thielen

Defendant Brett Thielen ("Thielen") filed a motion *pro se* on April 20, 2012, requesting that the Court not enter default against him, that the Court enter a general denial pursuant to Federal Rule of Civil Procedure 8(b), and that the Court stay the case until thirty days after he was scheduled to be released from prison in January 2013. (Mot. to Denial [sic] of Rule 12, Fed. R. Civ. P., Pursuant to Rule 8(b), "Thielen's Mot." or "Thielen's Motion") [Doc. No. 76 at 2].[22] At the time of his Motion, Thielen was incarcerated in Duluth, Minnesota. (*Id.* at 2–3). On referral, this Court recommended that entry of default not be entered, that a general denial not be entered and Thielen file an answer or response within forty-five days of the R&R, and that Thielen's request to stay the case until thirty days after his incarceration be denied. (R&R Dated June 20, 2012) [Doc. No. 128 at 5–6]. Chief Judge Davis entered an Order adopting the R&R. (Order Dated July 10, 2012) [Doc. No. 142]. Thielen filed his answer on August 30, 2012. (Resp. to Compl. Den. All Allegations of the Compl. Per Fed. R. Civ. P., Pursuant to Rule 8(b)(3), "Thielen's Answer") [Doc. No. 151].

Streambend now moves for an entry of default against Thielen. (Pls.' Mot. for Entry of Default Against Brett Thielen, "Mot. for Default") [Doc. No. 232]. Streambend argues that

---

[22] Thielen's Motion does not have page numbers. *See* (Thielen's Mot.). The pages cited refer to the page numbers assigned by the CM/ECF system.

although Thielen has pleaded, he is unreachable because mail sent to him by the Court was returned as undeliverable, and he has not provided the Court or Streambend with updated contact information. (Pls.' Mem. in Supp. of Mot. for Entry of Default Against Brett Thielen, "Mem. in Supp. of Default") [Doc. No. 233 at 1]. Streambend argues that since Thielen's Answer, "he has not . . . made any overt manifestation of an intent to defend or even a desire to remain apprised of the present action. . . . Thielen may have elected not to defend against the present action." (*Id.* at 2). Thielen did not respond to the Motion for Default, and the Court heard oral argument on August 15, 2013, pursuant to its Scheduling Order. (Scheduling Order at 3); (Minute Entry Dated Aug. 15, 2013) [Doc. No. 288].

Entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend[] . . . ." Fed. R. Civ. P. 55(a). As Streambend notes, Thielen has appeared, and pleaded by filing an Answer. (Thielen's Answer); (Mem. in Supp. of Default). Thielen's failure to provide Streambend or the Court with his updated contact information is not sufficient for entry of default. Streambend does not describe its attempts to locate Thielen, if any, or identify any aspect of this case to which Thielen was required to respond and did not. (For example, discovery has not yet begun in this case.) Therefore, the Court recommends that Streambend's Motion for Default be denied.

Additionally, the Court *sua sponte* recommends that all claims against Thielen be dismissed for failure to state claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991) (holding that when service of process is completed, a court may dismiss a complaint *sua sponte* under Rule 12(b)(6)). The Third Amended Complaint makes the following claims against Thielen: Count I: Violation of 15 U.S.C. § 1703(a)(2)(B); Count II: Violation of 15 U.S.C. § 1703(a)(2)(A) and (C); Count III:

Violation of MCIOA; Count IV: Fraud; Count VII: Unjust Enrichment; Count VIII: Declaratory Judgment; and Count IX: Negligent Misrepresentation. (TAC ¶¶ 91–139, 147–65). Earlier this year, the Court recommended that these claims against the Moving Defendants be dismissed, and Chief Judge Davis adopted the recommendation.[23] (Jan. 2013 R&R at 25); (Feb. 2013 Order at 3–4). The Moving Defendants were in substantially the same position as Thielen in Streambend's Third Amended Complaint: Thielen and the Moving Defendants are described by Streambend as "Developers" in the Third Amended Complaint. *See* (TAC ¶ 23).[24]

Each claim made against Thielen was discussed in detail in the context of the Moving Defendants in the Court's January 2013 R&R and dismissed with prejudice by Chief Judge Davis. (January 2013 R&R at 18–24); (Feb. 2013 Order at 3–4). In its discussion of Counts I, II, and III, the Court recommended dismissal of those claims "against all Defendants." (Jan. 2013 R&R at 20, 22). The Court recommended that the remaining claims against the Moving Defendants (Counts IV, VII, VIII, and IX) be dismissed, without specifying against which Defendants. (Jan. 2013 R&R at 24). But because only certain Defendants had filed motions to dismiss, the Court's recommendation did not specifically recommend dismissal of claims against any non-moving parties, except Sexton Lofts.[25] (Jan. 2013 R&R at 25–26). Chief Judge Davis

---

[23]     As stated above, the Moving Defendants include Abdul-Hajj, Sexton I, Michael P. Medved, Medved LP, MRM, and James Myers. (Jan. 2013 R&R at 2).

[24]     Michael P. Medved and James Myers are not listed as Developers. (TAC ¶ 23). Claims against Michael P. Medved were dismissed with prejudice prior to the January 2013 R&R, which clarified his status. (June 2012 Order at 15) (removing Michael P. Medved as a defendant); (Jan. 2013 R&R at 12–13 noting that Michael P. Medved is no longer a party to this case). For ease of reference, the Court describes Michael P. Medved as dismissed with prejudice through the January 2013 R&R and February 2013 Order. James Myers is not listed as a defendant for any claims in the Third Amended Complaint, but is likely considered a Developer by Streambend because his name was substituted for John Gamble's. *See* (TAC ¶¶ 95–179); note 2, *supra*.

[25]     The Court recommended dismissal of Count V: Wrongful Cancellation and Count VI: Breach of Contract against Sexton Lofts. (Jan. 2013 R&R at 17–18). Counts V and VI were only made against Sexton Lofts. (TAC ¶¶ 140–46).

adopted the Court's R&R and clarified that all claims against the Moving Defendants were dismissed with prejudice.  (Feb. 2013 Order at 3–5).

The Court's analysis rested on Streambend's allegations and the effect of the State Court Decision, and did not analyze each of the Moving Defendants separately.  *See* (Jan. 2013 R&R at 18–24).  Thielen, as a Developer named in the same claims, should be dismissed on the same grounds.  In the interest of judicial economy and to avoid needless repetition, the Court incorporates by reference its analysis in the January 2013 R&R because its analysis applies with equal force to Thielen.  *See* (*id.*).  In short, Counts I and II should be dismissed because they are barred by the statute of limitations.  (*Id.* at 20).  Count III: MCIOA should be dismissed because Streambend cannot be a purchaser under that law.  (*Id.* at 22–23).  Counts IV and IX, for fraud and negligent misrepresentation, respectively, should be dismissed because Streambend did not exist at the time of the relevant Purchase Agreements, the Purchase Agreements were void under the State Court Decision, and therefore Streambend could not have relied on an agreement to which it was never a party.  (*Id.* at 23–24).  Count VII: Unjust Enrichment should be dismissed because the State Court Decision found the contracts on which Streambend's unjust enrichment claim rested—the Purchase Agreements—did not exist.  (*Id.* at 24).  Therefore, Streambend's entitlement to any appreciation in value as an alleged benefit of the Purchase Agreements fails because the Purchase Agreements are void .  (*Id.*).  Count VIII: Declaratory Judgment should be dismissed because there are no longer any viable causes of action against Thielen.  (*Id.*).  In summary, the Court now recommends that that the claims against Thielen be dismissed with prejudice for the reasons previously identified in the Court's January 2013 R&R.  *See* (Jan. 2013 R&R at 18–24).

### D. Streambend's Motion for Default Judgment

Streambend moves for entry of default judgment against the following Defendants: JJT, LLC ("JJT"); JJT Development, LLC ("JJT Development"); Heather Enterprises, II, LP ("Heather Enterprises"); Regency Commercial Services of Minnesota, LLC ("Regency Minnesota"); Regency Commercial Services, LC ("Regency Commercial"), Robert Myers, and Thielen. (Pls.' Mot. for Entry of Default J., "Streambend's Motion for Default Judgment" or "Streambend's Mot. for Default J.") [Doc. No. 257]. For the reasons stated below, the Court recommends that Streambend's Motion for Default Judgment be denied.

#### 1. Legal Standard

At a party's request, a court may enter default judgment against a party who "has failed to plead or otherwise defend . . . ." *Norsyn, Inc. v. Desai*, 351 F.3d 825, 828 (8th Cir. 2003); *see also* Fed. R. Civ. P. 55(a), (b). An "entry of default under Rule 55(a) must precede a grant of default judgment under Rule 55(b)." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998). Default judgment is "only appropriate where there has been a clear record of delay or contumacious conduct." *Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1332 (8th Cir. 1988) (quotations and citations omitted). "[E]ntry of default judgment should be a rare judicial act." *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993) (internal citation and quotation omitted).

#### 2. Analysis

##### a. Dismissed Defendants

Streambend moves for default judgment against two dismissed Defendants, Robert Myers and Thielen. (Streambend's Mot. for Default J. at 1). Streambend applied for default against Robert Myers in May 2012. (Pls.' Request for Entry of Default against Robert Myers) [Doc. No.

117].  The Clerk of Court did not enter default, and Streambend filed a motion in January 2013.  (Pls.' Mot. for Entry of Default Against Robert Myers) [Doc No. 194].  Robert Myers appeared and filed a motion to dismiss in March 2013.  (Robert Myers's Mot. to Dismiss) [Doc. No. 210].  Chief Judge Davis referred the motions against Robert Myers to the undersigned, and the Court heard oral argument on May 14, 2013.  (Order of Referral Dated Feb. 22, 2013) [Doc. No. 202]; (Order of Referral Dated Mar. 18, 2013) [Doc. No. 218]; (Am. Minute Entry Dated May 14, 2013) [Doc. No. 240].  The Court recommended that Streambend's Request for Entry of Default and Motion for Entry of Default be denied as moot, and that Robert Myers's motion to dismiss be granted.  (July 2013 R&R at 14).  Chief Judge Davis adopted the R&R and dismissed Robert Myers with prejudice.  (Aug. 2013 Order).  Therefore, Robert Myers is no longer a defendant in this case, and default judgment is not appropriate.

Streambend filed its motion for default against Thielen concurrent with this Motion for Entry of Default Judgment.  *See* (Mot. for Default).  As discussed above, the Court denies Streamend's Motion for Entry of Default against Thielen.  *See* page 31, *supra*.  Because there is no entry of default against Thielen, entry of default judgment is likewise inappropriate.  *See Johnson*, 140 F.3d at 783.  Further, the Court recommends dismissing all claims against Thielen.  *See* pages 31–33, *supra*.

For the foregoing reasons, the Court recommends denying Streambend's Motion for Entry of Default with respect to Robert Myers and Thielen.

### b.        Defaulting Defendants

### i.        Motion for Default Judgment

Six defendants are now in default: Sexton Lofts, JJT, JJT Development, Heather Enterprises, Regency Minnesota, and Regency Commercial (collectively, the "Defaulting

Defendants"). (Clerk's Entry of Default as to Heather Enterprises) [Doc. No. 93]; (Clerk's Entry of Default as to JJT Development) [Doc. No. 94]; (Clerk's Entry of Default as to Regency Commercial) [Doc. No. 96]; (Clerk's Entry of Default as to Regency Minnesota) [Doc. No. 97]; (Clerk's Entry of Default as to JJT) [Doc No. 106]; (Clerk's Entry of Default as to Sexton Lofts) [Doc. No. 107].[26] Streambend moves for default judgment against all but Sexton Lofts. (Mot. for Entry of Default). Streambend states Sexton Lofts is excepted from default judgment because it is dismissed from the case. (Pls.' Mem. in Supp. of Mot. for Entry of Default Judgment Against Defaulting Defs., "Streamend's Mem. in Supp. of Default J.") [Doc. No. 258]. The Court reads the applicable R&R and Order not to dismiss all claims against Sexton Lofts, but rather to dismiss only Counts V: Wrongful Cancellation and Count VI: Breach of Contract against Sexton Lofts, the only party against which those claims were made. *See* (TAC ¶¶ 140–46); (Jan. 2013 R&R at 17–18, 25–26); (Feb. 2013 Order at 4). In the interest of completeness, the Court addresses Streambend's Motion for Default Judgment as if it were made against Sexton Lofts as well.

Although the Entries of Default have been entered against the Defaulting Defendants, none of them have ever appeared in this case, and the Court recommends that Streambend's Motion for Default Judgment be denied with respect to all of them. *See* (Entries of Default). Four of the Defaulting Defendants were not found at their registered addresses. (Summons Returned Executed Re: Sexton Lofts) [Doc. No. 60]; (Summons Returned Executed Re: JJT) [Doc. No. 61];[27] (Summons Returned Executed Re: JJT Development) [Doc. No. 62]; (Summons

---

[26] For ease of reference, the Court refers to these six documents collectively as the "Entries of Default."

[27] Although JJT could not be found at its registered address, it appears that it was served through Thielen. *See* (Summons Returned Executed Re: JJT); (Aff. of Not Found, Attached to Summons Returned Executed Re: JJT).

Returned Executed re: Regency Minnesota) [Doc. No. 65]. The remaining two Defaulting Defendants were served at their addresses. (Summons Returned Executed Re: Heather Enterprises) [Doc. No. 63]; (Summons Returned Executed Re: Regency Commercial) [Doc. No. 66]. To date, none of the Defaulting Defendants has appeared. *See Trs. of the St. Paul Elec. Const. Indus. Fringe Benefit Funds v. Martens Elec. Co.*, 485 F. Supp. 2d 1063, 1064 (D. Minn. 2007) (PJS/JJG) ("A judge is naturally reluctant to enter judgment against a party who has never appeared before the judge and told the judge his or her side of the story."). The Court has no record, and Streambend has offered none, of Defaulting Defendants' "delay or contumacious conduct." *See Taylor*, 859 F.2d at 1332. The fact that four of the Defaulting Defendants could not be found demonstrates a very real possibility that those entities no longer exist, and therefore could not have engaged in any actions warranting default judgment.

In addition, Defaulting Defendants are all categorized by Streambend as "Developers" in their Third Amended Complaint. *See* (TAC ¶ 23). As discussed above, and further explained below, all claims against Developers fail to state a claim upon which relief can be granted. To issue a default judgment against Defaulting Defendants in a case without merit does not serve the interests of justice.

For the foregoing reasons, the Court recommends that Streambend's Motion for Default Judgment be denied.

### ii. Recommendation to Set Aside Default and Dismiss Defaulting Defendants

Because Chief Judge Davis dismissed claims against appearing Defendants as meritless and the same claims are made against Defaulting Defendants, the Court recommends that the Defaulting Defendants' Entries of Default be set aside, and that the Defaulting Defendants be dismissed with prejudice.

An entry of default may be set aside for good cause, while relief from default judgment may be granted under Rule 60(b). Fed. R. Civ. P. 55(c). Typically, the same factors are relevant to setting aside default and default judgment. *Johnson*, 140 F.3d at 784. These factors include whether the defaulting party's conduct was "blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." *Id.* Consideration of setting aside default is a more lenient standard. *Id.* at 783–84.

In considering the factors governing this issue in the Eighth Circuit, the Court finds there is good cause to *sua sponte* set aside the Entries of Default against the Defaulting Defendants because they have a meritorious defense.[28] The Entries of Default were entered by the Clerk of Court upon Streambend's applications in May 2012. (Entries of Default). Since that time, the appearing Defendants and Streambend have engaged in active litigation. As part of the adversarial process, Streambend's claims have been dismissed with prejudice against several Defendants, who are part of a group of Defendants Streambend refers to as Developers. *See*

---

[28] A district court may *sua sponte* vacate a judgment under Rule 60(b). *Pierson v. Dormire*, 484 F.3d 486, 491 (8th Cir. 2007), *vacated in part on reh'g on other grounds by* 276 F. App'x 541 (8th Cir. 2008). The Eighth Circuit expressed a preference for the parties to have an opportunity to be heard. (*Pierson*, 484 F.3d at 492). The Eighth Circuit does not appear to have addressed the issue of whether the Court must give the parties an opportunity to be heard on a *sua sponte* consideration of setting aside default, a largely clerical action. The Court finds providing the parties an opportunity to be heard is not necessary here because the Court is setting aside an entry of default, as opposed to default judgment. Additionally, although Streambend has not explicitly been given an opportunity to be heard on the issue of setting aside the Entries of Default, it had—and took advantage of—opportunities to litigate its claims on the merits through its responses to various motions to dismiss, through its request for reconsideration of an Order ruling on the merits of the claims; and through its objections to this Court's R&Rs disposing of claims. *See, e.g.*, (Pls.' Resp. to Defs. Medved LP's and Michael P. Medved's Am. Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)) [Doc. No. 115]; (Pls.' Resp. to Defs. Sexton and Abdul-Hajj's Am. Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6); [Doc. No. 129]; (Pls.' Resp. to Defs. MRM & James Myers's Joint Mot. to Dismiss) [Doc. No. 130]; (July 2012 Letter) (requesting reconsideration of the January 2012 Order); (Streambend's Objections to January 2013 R&R); (Pls.' Objections to Magistrate Judge's July 24, 2013 R&R) [Doc. No. 287].

(TAC ¶ 23); s*ee also, e.g.*, (Jan. 2013 R&R at 24–25); (Feb. 2013 Order at 3–4). The Defaulting Defendants also belong to the group of Developers. (TAC ¶ 23).

In its Third Amended Complaint, Streambend makes the following claims against Developers: Count I: Violation of 15 U.S.C. § 1703(a)(2)(B); Count II: Violation of 15 U.S.C. § 1703(a)(2)(A) and (C); Count III: Violation of MCIOA; Count IV: Fraud; Count VII: Unjust Enrichment; Count VIII: Declaratory Judgment; and Count IX: Negligent Misrepresentation. (TAC ¶¶ 95–139, 155–65). Earlier this year, the Court recommended that these claims against the Moving Defendants be dismissed, and Chief Judge Davis adopted the recommendation.[29] (Jan. 2013 R&R at 25–26); (Feb. 2013 Order at 3–4).

The Court's R&R addressed each claim in detail. (Jan. 2013 R&R at 18–24). In its discussion of Counts I, II, and III, the Court recommended dismissal of those claims "against all Defendants." (Jan. 2013 R&R at 20, 22). The Court recommended that the remaining counts against the Moving Defendants (Counts IV, VII, VIII, and IX) be dismissed, without specifying against which Defendants. (Jan. 2013 R&R at 24). But because only certain Defendants had filed motions to dismiss, the Court's recommendation did not specifically recommend dismissal of claims against any non-moving parties, except Sexton Lofts.[30] (Jan. 2013 R&R at 25–26). Chief Judge Davis adopted the Court's R&R and clarified that all claims against the Moving Defendants were dismissed with prejudice. (Feb. 2013 Order at 4–5).

The Court's analysis rested on Streambend's allegations and the effect of the State Court Litigation, and did not analyze each Defendant who moved for dismissal separately. Defaulting

---

[29] As described above the Moving Defendants are Abdul-Hajj, Sexton I, Michael P. Medved, Medved LP, MRM, and James M. Myers. (Feb. 2013 Order at 3–4)

[30] As noted above, the Court recommended, and Chief Judge Davis ordered, dismissal of Count V: Wrongful Cancellation and Count VI: Breach of Contract against Sexton Lofts. (Jan. 2013 R&R at 17–18); (Feb. 2013 Order at 4). Counts V and VI were only made against Sexton Lofts. (TAC ¶¶ 140–46).

Defendants, as Developers named in the same claims, should be dismissed on the same grounds. In the interest of judicial economy and to avoid needless repetition, the Court incorporates by reference its analysis in the January 2013 R&R because its analysis applies with equal force to Defaulting Defendants. *See* (Jan. 2013 R&R at 18–24).[31] Therefore, the Court recommends that the Entries of Default against the Defaulting Defendants be set aside, and that all claims against the Defaulting Defendants be dismissed with prejudice.[32]

### E. Placeholder Defendants

Streambend also names what appear to be several placeholder parties as Defendants: John Doe, Mary Rowe, and XYZ Corp. (TAC ¶ 23). Streambend also describes these parties as Developers. (*Id.*). Therefore, the Court also *sua sponte* recommends dismissing John Doe, Mary Rowe, and XYZ Corp. with prejudice for the reasons listed above.

### F. Rule 11 Sanctions

Most of the Defendants who have appeared moved for sanctions under Federal Rule of Civil Procedure 11(c). (Sexton I and Abdul-Hajj's Motion for Rule 11 Sanctions) [Doc. No. 245]; (MRM, James Myers, and Robert Myers's Motion for Sanctions) [Doc. No. 250]; (Medved LP's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11(c)) [Doc. No. 251]; (Burnet's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11(c)) [Doc. No. 252] (collectively, "Defendants' Motions for Sanctions). In response, Streambend moved for sanctions against the Defendants that moved for sanctions against it. (Pls.' Mot. for Rule 11 Sanctions, "Streambend's Motion for Sanctions") [Doc. No. 266].

---

[31]     A short explanation of the reasons for dismissing each claim can be found at pages 31–33, *supra*, in the Court's discussion regarding *sua sponte* dismissing Thielen. Additionally, the January 2013 R&R and the February 2013 Order dismissed the remaining claims against Sexton Lofts. *See* (Jan. 2013 R&R at 17–18, 25–26); (Feb. 2013 Order at 4–5).

[32]     A court may dismiss claims *sua sponte* under Rule 12(b)(6). *Smith*, 945 F.2d at 1043.

Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994) ("[T]he primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending." (citation omitted)). The Court has broad discretion to determine what punishment will deter the undesireable conduct. *Pope v. Fed. Express Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995).

Because the Court recommends dismissal of all of Streambend's claims against the remaining Defendants, it does not find it necessary to impose sanctions against Streambend. Additionally, because Streambend's Motion for Sanctions is based on the Defendants' Motions for Sanctions, the Court likewise declines to impose sanctions against Defendants. Therefore, the cross motions for sanctions are denied.

## III.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiffs' Motion for Leave to Amend the Complaint [Doc. No. 261] is **DENIED**;

2.  Plaintiffs' Motion for Rule 11 Sanctions [Doc. No. 266] is **DENIED**;

3.  Defendants Sexton I, LLC's and Nedal Abdul-Hajj's Motion for Rule 11 Sanctions [Doc. No. 245] is **DENIED**;

4.  Defendants MRM Management Corp., James M. Myers, as Trustee for the Michael R. Myers Trust, and Robert T. Myers's Motion for Sanctions [Doc. No. 250] is **DENIED**;

5.     Defendant Medved LP's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11(c) [Doc. No. 251] is **DENIED**; and

6.     Defendant Burnet Realty LLC's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11(c) [Doc. No. 252] is **DENIED**.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.     Plaintiffs' Motion for Entry of Default Against Brett Thielen [Doc. No. 232] be **DENIED**;

2.     Plaintiffs' Motion for Entry of Default Judgment [Doc. No. 257] be **DENIED**; and

3.     Defendant Burnet Realty LLC's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. No. 247] be **GRANTED** and Burnet Realty LLC be **DISMISSED with prejudice**.

In addition, for the reasons outlined above, and based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.     All claims against Brett Thielen be **DISMISSED with prejudice**;

2.     The Clerk of Court's Entries of Default against Heather Enterprises II, LP [Doc. No. 93]; JJT Development LLP [Doc. No. 94]; Regency Commercial Services LC [Doc. No. 96]; Regency Commercial Services of Minnesota LLC [Doc. No. 97]; JJT LLC [Doc. No. 106]; and Sexton Lofts, LLC [Doc. No. 107] be **VACATED**;

3.     All claims against Heather Enterprises II, LP; JJT Development LLP; Regency Commercial Services LC; Regency Commercial Services of

Minnesota LLC; JJT LLC; and Sexton Lofts, LLC be **DISMISSED with prejudice**; and

4.    All claims against John Doe, Mary Rowe, and XYZ Corp. be **DISMISSED with prejudice**.


Dated: December 3, 2013.

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 17, 2013,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.