UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Streambend Properties III, LLC and
Streambend Properties IV, LLC,   Case No. 10-cv-4745 (MJD/SER)

    Plaintiffs,

v.   **REPORT AND RECOMMENDATION**

Sexton Lofts, LLC; JJT LLC; JJT
Development LLC; Heather Enterprises II, LP;
Medved LP; MRM Management Corp.;
Regency Commercial Services of Minnesota
LLC; Regency Commercial Services LC;
Sexton I, LLC; Brett A. Thielen; Nedal Abul-
Hajj; Burnet Realty, LLC; John Doe; Mary
Rowe; XYZ, Corp.; and James M. Myers,

    Defendants.

---

STEVEN E. RAU, United States Magistrate Judge

This above-captioned case comes before the undersigned on Plaintiffs Streambend Properties III, LLC and Streambend Properties IV, LLC'S (collectively, "Streambend") Motion for Relief from Judgment [Doc. No. 332]. After dismissal of its Interstate Land Sales Full Disclosure Act ("ILSFDA") claims, including the Eighth Circuit's affirmance of that dismissal, Streambend now alleges the District Court failed to consider agency statutory guidance that Streambend recently discovered. Also before the Court is Streambend's Motion for Substitution of Parties [Doc. No. 345], in which Streambend asserts its owner, Jerald Hammann ("Hammann"), should be substituted as the sole plaintiff in this matter because Streambend assigned its rights to Hammann.

This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1. (Order of Referral) [Doc. No. 333]. For the reasons stated below, the Court recommends denying both motions.

## I.   BACKGROUND

### A.   Factual Background[1]

The factual background has been described in the Court's past reports and recommendations.[2] This action arises out of Streambend's allegation that it was deprived of the increase in value of two condominium units it attempted to purchase and the earnest money it paid in pursuit of that attempt. The Court briefly describes the facts relevant to the pending motions.

Streambend is comprised of two limited liability companies, of which Hammann is the sole owner and chief manager.[3] Streambend's dispute is with Developers[4] who funded a real estate development ("the Development") called Sexton Lofts, LLC ("Sexton Lofts"). On or about November 4, 2004, Streambend entered into purchase agreements (collectively, the "Purchase Agreements") for Units 410 and 510 of Sexton Lofts, for $349,405 each.[5] Although the Purchase Agreements stated that two parking stalls would be included with each unit, the parking structure

---

[1]   In light of the complicated history of this case, the Court uses footnotes in the Background section of this Report and Recommendation to improve readability.

[2]   *See, e.g.*, *Streambend Props. III, LLC v. Sexton Lofts, LLC*, 297 F.R.D. 349, 353–54 (D. Minn. 2014) [hereinafter *Streambend – 2014*] (Davis, C.J., adopting report and recommendation of Rau, Mag. J.), *aff'd* 587 F. App'x 350 (8th Cir. 2014) [hereinafter *Streambend – 8th Cir.*] (per curiam).

[3]   (Third Am. Compl., "TAC") [Doc. No. 176 ¶¶ 4–5, 36–37; *see also* (Decl. of Jerald Hammann) [Doc. No. 344 ¶ 1].

[4]   Streambend describes all but three of the Defendants—Burnet Realty, LLC ("Burnet Realty"), Michael P. Medved, and James Myers—as "Developers." (TAC ¶¶ 23, 29–30).

[5]   (*Id.* ¶¶ 47–49, 85).

was never built.[6] On June 1, 2006, Sexton Lofts served Streambend with Notices of Cancellation of Purchase Agreements for Units 410 and 510 ("the Notices of Cancellation").[7] After Streambend's title in the units was terminated, another real estate company marketed the units for $552,250 each, including one garage stall each, and a similar unit sold for $567,000 in October 2006.[8] Based on those allegations, Streambend asserts that it was deprived of the increase in value to Units 410 and 510, the accompanying parking spaces, the value of the overall development, and $18,800 in earnest money.[9]

These factual allegations provided the basis for claims under ILSFDA and the Minnesota Common Interest Ownership Act ("MCIOA").[10]

### B.   Procedural Background

The procedural background of this case is as long and complicated as the factual background. Therefore, the Court summarizes only those portions of the docket necessary to provide context for Streambend's current motions. Of particular relevance is the Honorable Michael J. Davis's January 2012 order granting Burnet Realty's motion to dismiss the claims against it included in Streambend's Second Amended Complaint ("SAC").[11] Among other determinations, Judge Davis found that ILSFDA's statute of limitations barred Streambend's claims against Burnet Realty "because Streambend knew, or reasonably should have known, of the facts giving rise to an ILS[FD]A claim more than three years before this action was

---

[6]   (*Id.* ¶¶ 50(a)–(b), 51(a), 81).
[7]   (*Id.* ¶ 74).
[8]   (*Id.* ¶¶ 86–87).
[9]   (*Id.* ¶¶ 89–91).
[10]  *See* (*id.* ¶¶ 95–125). Although Streambend alleged other claims, they are not relevant to the pending motions. *See* (*id.* ¶¶ 126–179).
[11]  *Streambend Props. III, LLC v. Sexton Lofts, LLC*, No. 10-cv-4745 (MJD/SER), 2012 WL 38338 (D. Minn. Jan. 9, 2012) [hereinafter "*Streambend – Jan. 2012*"] (Davis, C.J.).

3

commenced on November 29, 2010 (by November 29, 2007)."[12] In particular, Judge Davis found that Streambend knew of the ILSFDA violations in June 2006, more than three years before initiating this lawsuit.[13] Streambend's request for reconsideration of that order and subsequent attempts to amend its ILSFDA claims were denied.[14]

Ultimately, Judge Davis dismissed the entire case with prejudice.[15] Streambend appealed, and the Eighth Circuit affirmed.[16] Streambend petitioned the United States Supreme Court for certiorari, but its petition was not accepted.[17]

Streambend filed the instant Motion for Relief from Judgement on November 4, 2016. On December 29, 2016, Streambend filed its reply in support of this motion and a separate Motion for Substitution of Parties. Both motions are ripe for consideration, and the Court considers each in turn.

## II.   MOTION FOR RELIEF FROM JUDGMENT

Streambend asserts that, "[o]n December 2, 2013 and May 1, 2015, the [Consumer Financial Protection Bureau ("CFPB")] issued determinations disclosing its interpretation of key sections of ILSFDA, definitively resolving matters of law that are in dispute in the present

---

[12]   *See id.* at *4; *see also* 15 U.S.C. § 1711(a)(2) (stating that a party seeking relief under ILSFDA must bring an action "three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence").
[13]   *See Streambend – Jan. 2012*), 2012 WL 38338, at *4–6.
[14]   *See* (Order Dated June 12, 2012) [Doc. No. 127 at 6–9] (permitting Streambend to file a Third Amended Complaint, but finding its attempts to amend its ILSFDA claims were futile); *Streambend Props. III, LLC v. Sexton Lofts, LLC*, No. 10-cv-4745 (MJD/SER), 2012 WL 4481300 at *3 (D. Minn. Sept. 28, 2012) (Davis, C.J.) (denying request for reconsideration of January 2012 order); *Streambend – 2014*, 297 F.R.D. at 358–60 (denying Streambend's fourth motion to amend the complaint to add, *inter alia*, new as well as previously dismissed ILSFDA claims).
[15]   *See Streambend – 2014*, 297 F.R.D. at 352.
[16]   *Streambend – 8th Cir.*, 587 F. App'x at 351.
[17]   (Mem. of P. & A. in Supp. of Mot., "Mem. in Supp. of Mot. for Relief from J.") [Doc. No. 335 at 3].

action." (Mem. in Supp. of Mot. for Relief from J. at 3). Streambend claims it discovered the 2013 determination in May 2015 when it asked CFPB to file an amicus brief on its behalf before the United States Supreme Court. (*Id.* at 3–4). Although its argument seems to be addressed to the Eighth Circuit, Streambend argues that "[b]ecause intervening controlling authority has reached a contrary decision, and further because the prior panel decision was clearly erroneous and letting it stand would work a manifest injustice, the court should reverse its prior ruling." (*Id.* at 26) (citing *Liberty Mut. Ins. v. Elgin Warehouse & Equip.*, 4 F.3d 567, 571 (8th Cir. 1993)).

Streambend quotes certain portions of a CFPB brief and argues these quotes mean that ILSFDA's requirement that purchasers have a duty to exercise reasonable diligence "is only triggered after a defendant provides an amended disclosure to a plaintiff wherein the new representation is 'highlighted,' 'clear' and 'unambiguous'" (*Id.* at 10). Streambend also claims Judge Davis erred in finding that constructive knowledge of the misrepresentation "can trigger the running of the statute of limitations." (*Id.* at 11) (citing *Merck & Co. v. Reynolds*, 559 U.S. 633, 634 (2010)). Finally, Streambend argues the Eighth Circuit (but confusingly, not this Court) should defer to the CFPB's determinations under the requirements established by either the *Chevron* or *Skidmore* United States Supreme Court decisions.[18] (Mem. in Supp. of Mot. for Relief from J. at 13–17).

Separately, Streambend also argues that this Court's determination—adopted by Judge Davis—that Streambend is not a purchaser under the MCIOA is "a substantial departure from the

---

[18]   Both of these cases addressed the deference courts should afford to agency interpretations of regulations and statutes. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."); *Skidmore v. Swift & Co.*, 323 U.S. 134, 139 (1944) (holding that an agency's interpretation of a statute is entitled to some deference in light of the "specialized experience and broader investigations and information" available to it).

5

legal conclusions of every other court to interpret the 'any person . . . adversely affected phrase'" of the MCIOA, which is based on the Uniform Common Interest Ownership Act ("UCIOA"). (*Id.* at 22); *see also* (*id.* at 21–22) (citing *Streambend Props. III, LLC v. Sexton Lofts, LLC*, No. 10-cv-4745 (MJD/SER), 2013 WL 673854 (D. Minn. Jan. 28, 2013) (Rau, Mag. J) [hereinafter *Streambend – Jan. 2013*], *adopted by* 2013 WL 674014 (Feb. 25, 2013) (Davis, C.J.)).

The Court concludes that there is no change in the law with respect to ILSFDA and that there is no reason to provide relief from the judgment regarding the MCIOA claims. Therefore, the Court recommends the Motion for Relief from Judgment be denied.

### A.  Legal Standard

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for" several specific reasons, including "(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."[19] Fed. R. Civ. P. 60(b). The district court has discretion to determine whether relief should be granted under Rule 60(b). *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1152 (8th Cir. 2013).[20]

---

[19]  Although Streambend did not specify under which subsection of Rule 60(b) it seeks relief, its Reply refers to these two sections. (Reply Mem. of P. & A. in Supp. of Mot., "Reply") [Doc. No. 343 at 10 n.10].

[20]  A motion made under Rule 60(b)(5) or (6) "must be made within a reasonable time." *See* Fed. R. Civ. P. 60(c)(1). Defendants argue that Streambend did not bring its motion within a reasonable time. (Defs.' Joint Resp. to Pls.' Mot. for Relief from J., "Resp.") [Doc. No. 341 at 4–5]. But because the Court concludes that the Motion for Relief from Judgment fails on its merits, the Court assumes without deciding that Streambend's motion is timely.

6

### B.  Analysis

#### 1.  Rule 60(b)(5)

Two of the conditions described in Rule 60(b)(5) that justify relief from judgment—satisfaction of judgment or the vacation or reversal of an underlying judgment—are not present in this case. Instead, it appears that Streambend argues that applying the judgment is "no longer equitable" based on what Streambend interprets to be a change in the law. *See* Fed. R. Civ. P. 60(b)(5); (Mem. in Supp. of Mot. for Relief from J. at 25) (arguing the judgment "is manifestly unjust . . . because the complaint adequately states ILSFDA and UCIOA claims); (*id.* at 26) ("Because intervening controlling authority has reached a contrary decision, and further because the prior panel decision was clearly erroneous and letting it stand would work a manifest injustice, the court should reverse its prior ruling." (citing *Liberty Mut. Ins.*, 4 F.3d at 571)); (Reply at 10) (arguing that "a change in the law may lead to a successful Rule 60(b)(5) motion." (quoting *Davis v. Hot Springs Sch. Dist.*, 833 F.3d 959, 963–64 (8th Cir. 2016)).

> Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest. The party seeking relief bears the burden of establishing that changed circumstances warrant relief.

*Horne v. Flores*, 557 U.S. 433, 447 (2009) (internal citation and quotation marks omitted).

##### a.  ILSFDA Statute of Limitations

Streambend's claims under ILSFDA were dismissed with prejudice because Streambend failed to bring its claims within the applicable statute of limitations period. *Streambend – Jan. 2012*, 2012 WL 38338, at *4. Nothing in the CFPB documents Streambend cites changes the statute of limitations.

7

Streambend cites the *3D Resorts-Bluegrass* Brief for the proposition that ILSFDA's requirement that purchasers have a duty to exercise reasonable diligence "is only triggered after a defendant provides an amended disclosure to a plaintiff wherein the new representation is 'highlighted,' 'clear' and 'unambiguous.'" (Mem. in Supp. of Mot. for Relief from J. at 10); *see also* (*id.* at 8–9); (Prehr'g Br. of CFPB, *In re 3D Resorts-Bluegrass, LLC*, CFPB No. 2013 CFPB-0002 (Aug. 7, 2013) [Doc. No. 28], "*3D Resorts-Bluegrass* Br.," Addendum) [Doc. No. 336 at 22].[21] But the *3D Resorts-Bluegrass* Brief does not support Streambend's argument.

First, even if the statements to which Streambend refers on pages 8 and 9 of its memorandum were made in the context of the statute of limitations—which they were not—there is nothing new about them. In particular, elements of Streambend's argument were publically available well before this lawsuit began. For example, one quote on which Streambend relies ("[I]nvestors are not generally required to look beyond a given document to discover what is true and what is not.") quotes, in turn, a 2008 case. (*3D Resorts-Bluegrass* Br., Addendum at 22 n.3) (quoting *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 887 (9th Cir. 2008)). The other statements regarding countervailing information are based on Congressional statements reprinted in 1979, a 2009 Southern District of Florida case, and a 1989 First Circuit Court of Appeals case. *See* (*3D Resorts-Bluegrass* Br., Add. at 23 n.5). Thus, for Streambend to suggest that language in the *3D Resorts-Bluegrass* Brief was not found during the course of this litigation because the CFPB published it, rather than a more traditional legal commercial reporting service, is untrue. *See* (Mem. in Supp. of Mot. for Relief from J. at 3). The Court concludes that there was no change in the law during the pendency of this litigation, and therefore, Rule 60(b)(5) does

---

[21] Streambend mistakenly refers to the *3D Resorts-Bluegrass* Brief as an order. *Compare* (*3D Resorts-Bluegrass* Br., Addendum at 15) (title page), *with* (Mem. in Supp. of Mot. for Relief from J. at 8) (referring to "determination").

not provide grounds for relief under the theory that applying the judgment is "no longer equitable."[22]

Streambend also argues that Judge Davis's determination that constructive knowledge can trigger the running of the statute of limitations is inconsistent with the CFPB documents and a United States Supreme Court case. (*Id.* at 11) (citing *Merck & Co.*, 559 U.S. 633). *Merck* provides no such support.

In *Merck*, the Supreme Court considered whether a private securities fraud action was filed timely under the statute of limitations. 559 U.S. at 637. The statute of limitations at issue required an action to be brought either "'2 years after the discovery of the facts constituting the violation'" or "'5 years after such violation.'" *Id.* at 638 (quoting 28 U.S.C. § 1658(b)). The Supreme Court concluded that the reference to "discovery" in the statute of limitations "refers not only to a plaintiff's **actual** discovery of certain facts, but also to the facts that a reasonably diligent plaintiff would have discovered," even though "the statute's language does not make this interpretation obvious." *Id.* at 644 (emphasis in original). As Streambend notes, the Supreme Court held that "the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered the facts constituting the violation." *Id.* at 653; *see also* (Mem. in Supp. of Mot. for Relief from J. at 11).

Streambend does not explain how *Merck* relates to this case. Further, *Merck* is **consistent with** Judge Davis's determination that constructive knowledge can initiate the statute of limitations time period. *Merck* is not, as Streambend argues, inconsistent with Judge Davis's decision. *See* (Mem. in Supp. of Mot. for Relief from J. at 11). The language the Supreme Court

---

[22] Because this Court concludes that there is no change in the law, the Court need not discuss what deference is owed to the CFPB's interpretation of the change in law. *Cf.* (Mem. in Supp. of Mot. for Relief from J. at 13–17).

read into the securities statute of limitations tracks closely with the plain language of the ILSFDA statute of limitations. *Compare Merck*, 559 U.S. at 653 ("[T]he limitations period does not begin to run until the plaintiff thereafter **discovers or a reasonably diligent plaintiff would have discovered** the facts constituting the violation." (emphasis added)), *with Streambend – Jan. 2012*, 2012 WL 38338, at *4 (concluding that the ILSFDA claims were "barred because Streambend **knew, or reasonably should have known**, of the facts giving rise to an ILS[FD]A claim more than three years before this action was commenced on November 29, 2010 (by November 29, 2007)" (emphasis added)), *and* 15 U.S.C. § 1711(a)(2) (limiting time to bring an ILSFDA action to "three years after **discovery of the violation or after discovery should have been made** by the exercise of reasonable diligence" (emphasis added)). Further, *Merck* was decided in 2010, nearly two years before Judge Davis's January 2012 Order, and therefore, is not a change in the law. The Court concludes *Merck* does not provide grounds to reopen or vacate the judgment.

The Court concludes there have been no changes in the law that alter interpretation of the ILSFDA statute of limitations. Accordingly, the Court recommends the Motion for Relief from Judgment be denied to the extent it seeks relief on these grounds.

### b.     MCIOA

In January 2013, this Court recommended that Streambend's MCIOA claim be dismissed because Streambend was not a "purchaser" under the MCIOA. *Streambend – Jan. 2013*, 2013 WL 673854, at *11. Streambend now argues that this is a departure from other courts' decisions. (Mem. in Supp. of Mot. for Relief from J. at 22). Specifically, Streambend argues that because it was adversely affected, the court erred in "graft[ing] the requirement of purchaser status onto the 'any person' phrase, changing 'any person' to 'any purchaser.'" (*Id.*). The Court understands

Streambend to be arguing that because it was "adversely affected" by the Notices of Cancellation, its status as a purchaser is immaterial. *See* (*id.*).

Streambend's argument is directed towards a state district court decision that determined that Streambend did not have the power to contract—in other words, to enter into the Purchase Agreements—because Streambend did not exist at the time of the Purchase Agreements. *See Streambend – Jan. 2013*, 2013 WL 673854, at *3–4. The state district court found that Streambend "did not come into existence" until a few days after the Purchase Agreements were signed, and therefore, the Purchase Agreements were void.[23] *Id.* at *4; *see also Stone v. Jetmar Props., LLC*, 733 N.W.2d 480, 487 (Minn. Ct. App. 2007) ("We see no reason to deviate from the 'ordinary rule' that a deed to an entity nonexistent at the time of conveyance is void."). Streambend's argument is, essentially, that the state district court was wrong, and this Court was wrong to rely on the state district court. But Streambend makes no argument articulating why applying these decisions "is no longer equitable" under Rule 60(b)(5), nor could it. Hammann, who was the plaintiff in the state court action, did not appeal the state court decision. *Streambend – Jan. 2013*, 2013 WL 673854, at *4. Further, as this Court has stated previously, "[s]tate judicial proceedings must be given 'the same full faith and credit' in the federal courts as they would receive in the courts of the rendering state." *Id.* (quoting 28 U.S.C. § 1738). Therefore, the Court recommends denying relief under Rule 60(b)(5) to the extent Streambend seeks relief from the Court's judgment dismissing the MCIOA claims.

---

[23] The state district court found the Purchase Agreements were signed on October 27, 2004, and Streambend "did not come into existence until October 29, 2004." *Streambend – Jan. 2013*, 2013 WL 673854, at *4. This finding is supported by the Purchase Agreements, which became part of the record in the course of this litigation. *See* (Purchase Agreements, Ex. F, Attached to Aff. of Christopher L. Goodman) [Doc. No. 28-6].

### 2. Rule 60(b)(6)

A movant seeking relief under Rule 60(b)(6) must "show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). "Relief under this rule is exceedingly rare as relief requires an intrusion into the sanctity of a final judgment." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 868 (8th Cir. 2007) (internal quotation marks omitted). A change in the law regarding the statute of limitations does not satisfy Rule 60(b)(6). *See Gonzalez*, 545 U.S. at 536 (stating that the Supreme Court's change in the interpretation of the Antiterrorism and Effective Death Penalty Act's statute of limitations was insufficient to satisfy the "extraordinary circumstances" requirement of Rule 60(b)(6), even assuming that the district court's ruling was incorrect).

As stated above, Streambend has not demonstrated that there has been a change in the law. Further, even if Streambend had made such a showing, it would be insufficient to grant relief under Rule 60(b)(6). *See Gonzalez*, 545 U.S. at 536. Therefore, the Court recommends the Motion for Relief from Judgment be denied to the extent it seeks relief under Rule 60(b)(6).

### 3. Arguments in Reply

In its Reply, Streambend argues that it discovered "additional grounds for relief beyond those argued . . . in its original memorandum" that entitle it to relief under both Rule 60(b)(5) and (6). (Reply at 10). In particular, Streambend argues it suffered "reputational damage as a result of the findings," based on "the plight of Ms. Rojas, Streambend['s] former counsel" and Defendants' "allegations about the reputation of Streambend and its owner." (*Id.* at 11–12).

Streambend's reliance on a 2012 case from this District is unavailing. Streambend relies on *August Technology, Corp. v. Camtek, Ltd.*, No. 05-cv-1396 (JRT/FLN), 2012 WL 3568823, at *4 (D. Minn. Aug. 17, 2012) (Tunheim, J.). (*Id.* at 10–11). In *August Technology*, the Honorable

John R. Tunheim considered a motion for relief under Rule 60(b)(5) from two orders: an order finding willful infringement and a subsequent order denying a motion to set aside the willful infringement finding. 2012 WL 3568823, at *4. Judge Tunheim found that the moving party did not have standing to appeal the order denying the motion to set aside the willful infringement finding because the moving party was the prevailing party. *Id.* In this context, Judge Tunheim stated that the moving party "presented no evidence that it has suffered reputational damage as the result of the finding." (*Id.*).

Streambend refers to this same language in its Reply. *See* (Reply at 11). Streambend's reliance on *August Technology* is misplaced. The quoted language stands for the proposition that a party may demonstrate standing through reputational damage; it does not stand for the proposition that reputational damage provides grounds for relief under Rule 60(b)(5). *See August Tech.*, 2012 WL 3568823, at *4. Therefore, *August Technology* does not provide an avenue for relief from judgment.

### 4. Conclusion

Because there was no change in the law regarding ILSFDA's statute of limitations, and because there are no grounds to revisit the Court's dismissal of Streambend's MCIOA claims, the Court recommends the Motion for Relief from Judgment be denied.[24]

---

[24] Streambend makes two arguments that do not have a clear relationship to its Motion for Relief from Judgment. First, Streambend argues that the CFPB "reaffirmed" the determination "that scienter is not an element of any ILSFDA claim." (Mem. in Supp. of Mot. for Relief from J. at 4) (citing *3D Resorts-Bluegrass* Br., Addendum at 24 n.7). Second, Streambend argues that the *International Land Consultants* case, along with the *3D Resorts-Bluegrass* case, stand for the proposition that "there are numerous patterns of disclosure, lack of disclosure and conduct regarding infrastructure and amenities which represent independent ILSFDA violations." (*Id.* at 6). But because Streambend does not seek relief based on the number of independent ILSFDA violations, the Court finds the discussion of scienter and the *International Land Consultants* case inapplicable to Streambend's Motion for Relief from Judgment.

### III. MOTION FOR SUBSTITUTION OF PARTIES

Defendants argued in their response to Streambend's Motion for Relief from Judgment that Streambend had assigned its rights to Hammann and therefore, there was "no showing that Streambend has any claims to assert." (Resp. at 2 n.1). Thus, Streambend now moves to substitute Hammann for Streambend in this action because "Streambend assigned to Hammann any and all rights and obligations it possesses relative to any litigation against any party relating to the development of the Sexton Lofts Condominiums." (Mem. of P. & A. in Supp. of Mot.) [Doc. No. 346 at 2]; *see also* (*id.* at 3).

Under Rule 25(c) of the Federal Rules of Civil Procedure, "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Hammann previously filed the same motion on the same grounds, which Judge Davis denied. (Mot. for Joinder or Substitution of Parties) [Doc. No. 318]; (Order Dated July 7, 2015) [Doc. No. 320]. Hammann appealed, and the Eighth Circuit affirmed Judge Davis's order. (J.) [Doc. No. 328]. The Eighth Circuit then denied petitions for rehearing en banc and rehearing by the panel. (Order Dated Nov. 25, 2015) [Doc. No. 329]. Streambend cites no authority for this Court to consider the Motion for Substitution of Parties when the issues were already raised, decided, and appealed. Therefore, the Court recommends the Motion for Substitution of Parties be denied.

### IV. RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiffs Streambend Properties III, LLC and Streambend Properties IV, LLC'S (collectively, "Streambend") Motion for Relief from Judgment [Doc. No. 332] be **DENIED**; and

2. Streambend's Motion for Substitution of Parties [Doc. No. 345] be **DENIED**.

Dated: March 27, 2017

<u>s/Steven E. Rau</u>
STEVEN E. RAU
United States Magistrate Judge

### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.